E. I. DUPONT DE NEMOURS & COMPANY, a corporation, Plaintiff Below, Appellant, v. I. D. GRIFFITH, INC., a corporation, Defendant below, Appellee.

*(March* 29, 1957.)

WOLCOTT and BRAMHALL, Justices, and MARVEL, Vice-Chancellor, sitting.

*Carl E. Geuther* for appellant.

*Henry R. Horsey* for appellee.

Supreme Court of the State of Delaware, No. 50, 1956.

WOLCOTT, J.:

An action was commenced by duPont Company to recover damages resulting from the forceful moving by a high wind of a piece of metal duct work left on the roof of a building being constructed at its Chestnut Run Plant. The cause was tried before the Court without a jury and resulted in the entry of a judgment for the defendant, Griffith.

DuPont Company entered into a contract with Griffith for the erection of metal duct work on the roof of its Polychemical Laboratory. At the same time, duPont Company was engaged either with its own employees or through other contractors with the construction of a roof for that laboratory. To give access to the roofers to that part of the roof on which they were then working, a piece of metal duct work previously installed by Griffith's employees was unfastened and placed out of the way of the workmen but in a position exposed to the winds.

As a normal routine, duPont Company obtained weather forecasts daily and advised the responsible persons supervising any work on its premises of these forecasts. On July 14, 1954 thunderstorms were predicted for that night and the following day. This forecast was passed on to the various responsible persons. Notwithstanding this warning, the piece of metal duct work, which had been unfastened, was not secured at the end of the day's work, nor placed in a safe position. During the night it was forced by high winds across the roof of the laboratory, occasioning damage to the extent of approximately $2,100.

The action seeks to hold Griffith responsible on the theory that it was an independent contractor and that the duct work was left exposed by the negligence of Griffith's employees for which it is responsive in damages.

The fundamental issue is whether Griffith was in fact an independent contractor, or whether duPont Company exercised such control over Griffith's employees that, in effect, Griffith had been made the agent of duPont Company, thus placing the responsibility for damage resulting from the negligence of Griffith's employees upon duPont Company itself.

The trial Judge held that Griffith was not an independent contractor but was an agent of duPont Company which had retained a large measure of control over the operation Griffith had contracted to perform. The trial Judge found that duPont Company's control was asserted through its employee, Harrington.

There is no dispute as to the rule of law applicable. Admittedly, if Griffith was operating as an independent contractor it is liable for the damage resulting from negligent failure to secure from high winds the piece of metal duct work in question. The problem resolves itself, therefore, to a determination of the status of Griffith. Generally speaking, there is no absolute rule to be applied in determining whether or not a purported contractor is in fact independent, or is in fact an agent or employee of the owner. Each case stands or falls on its own facts. The test of independency consists of the amount of control retained or exercised by the owner, particularly with respect to the absolute right to direct the manner and method of proceeding with the work rather than with respect to the end result only. A requirement that the work be performed according to standards and specifications imposed by the owner is not sufficient to establish the degree of control necessary to make a presumably independent contractor the agent of the owner. But retention of the right not only to insure conformity with specifications but the retention or exercise of the right to direct the manner in or means by which the work shall be performed will destroy the independent status of the contractor. 27 *Am. Jur.*, Independent Contractors, §§ 5, 6, 7; 1 *Thompson on Negligence* 547; 56 *C. J. S.*, Master and Servant, § 3(2); *Restatement of Agency*, § 2(3).

The question, therefore, decided below was almost entirely one of fact. Upon appeal, by way of Writ of *Certiorari* from such a ruling the function of this Court is to determine whether or not the judgment rendered is supported by any competent evidence in the record, and if that be the fact, to issue a mandate of affirmance. This result would follow even though an independent evaluation of the record by us might lead to an opposite conclusion. We are required to treat the judgment of a Superior Court Judge sitting without a jury as though it had been entered following the rendering of a jury's verdict. *Mulco Products v. Black*, 11 *Terry* 246, 127 *A.* 2d 851; *Turner v. Vineyard*, 7 *Terry* 138, 80 *A.* 2d 177.

We think the trial Judge accepted at its face value the testimony of Harrington, the admitted employee of duPont Company, who was called as one of its principal witnesses. If this testimony is accepted, as we believe it was by the trial Judge, it appears that he was the man placed by duPont Company in charge of all of the roofing activity and related matters; that it was his job to co-ordinate the activities of the various subcontractors working on the roof, including the activities of Griffith's men installing the metal duct work; that part of his job was to approve or disapprove all the work done on the roof; that he had over-all control of all work done on the roof; and that any work done must be done in accordance with duPont Company's safety standards.

Harrington testified that the particular piece of duct work, the moving of which by high winds caused the damage, had at one time been installed by Griffith and had been removed later to permit access for workmen and materials to other parts of the roof. He testified that if the duct work had not been removed at his specific direction, nevertheless it had been moved with his approval. He testified that it was his duty to see that material lying around on the job was secured against movement by high winds at the close of the day's work. He further testified that while he knew the particular piece of metal duct work was, on July 14, 1954, placed in an exposed and vulnerable position, and that he gave orders to secure all loose material at the close of work on that day, nevertheless he did not make certain that this particular piece of duct work was securely fastened.

Primarily, upon the basis of Harrington's testimony, the trial Judge concluded that duPont Company, through one of its employees, exercised absolute control over the means and manner of performing the roofing and related activities involved in the construction project. We think his conclusion in this respect is supported by competent evidence if Harrington's testimony is accepted fully. The conclusion thus reached gains some additional support from the anomalous position of one Wofford, who was carried on Griffith's payroll as its foreman in charge of

its employees working on the job. Actually, Wofford had been a duPont Company employee engaged in supervising sheet metal work for a number of years prior to the execution of the contract between Griffith and duPont Company. He was in fact so employed at a duPont Company plant in the South when he received orders from duPont Company to report to the Chestnut Run Plant in Wilmington. When he reported there he found that he had been placed upon Griffith's payroll and put in charge of Griffith's men performing its contract with duPont. This contract was let to Griffith on a cost-plus-fixed-fee basis. Wofford was in complete charge of Griffith's men. He testified that it was common practice for the duPont Company to enter into an arrangement of this nature when the job to be done was such that certain crafts would not work for duPont Company directly. It further appears that upon the completion of the job, Wofford expected to return to the employ of duPont Company.

The trial Judge expressly stated that he did not find it necessary to decide whether Wofford's equivocal status on Griffith's payroll was decisive on the question of control over the operation by duPont Company, but that his position, considered with the position of Harrington as outlined in his uncontradicted testimony, compelled the conclusion that Griffith was not an independent contractor.

We think that there is sufficient evidence in the record to support the conclusion without the necessity of deciding the question of whether or not Wofford came under the category of a duPont Company employee loaned to Griffith which, under some circumstances, would support the conclusion that the loaning employer retained such a measure of control over the operation as to destroy the independent nature of the contract. *Cf. Restatement of Agency*, § 227.

This record presents one curious aspect. Neither party has seen fit to offer in evidence the contract between duPont Company and Griffith. The failure to do so is unexplained, and we think the lack of explanation by one side or the other is, in it-

self, inexplicable, since the contract is always an important factor in determining whether the owner has retained such a right of control over the operation as to destroy the existence of an independent contract.

Finally, duPont Company argues that irrespective of the fact of whether or not Griffith was an independent contractor, the failure to secure the piece of duct work was the direct responsibility of one Draco, an employee of Griffith, after orders to secure everything had been issued, and that an agent or servant is liable to his principal for the negligent performance of his duties. Assuming that to be the rule, it does not help duPont Company's case, for it also was the responsibility of Harrington, not only to order the material to be made secure, but also to insure that his orders were carried out. He did not do the latter. His negligence accordingly was a contributing cause of the damage and, as such, is imputed to his employer, duPont Company. 65 *C. J. S.*, Negligence, § 162.

We hold, therefore, that there is competent evidence in the record to support the factual conclusions of the trial Judge upon which judgment was entered for Griffith.

The judgment below is affirmed.