## Warren Page and Janice Page v. Anthony Suraci and Barbara Suraci

[483 A.2d 601]

No. 560-81

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed September 7, 1984

*Weber, Perra & Gibson,* Brattleboro, for Plaintiffs-Appellees.

*Crispe & Crispe,* Brattleboro, and *Robert F. Bates,* Newfane, for Defendants-Appellants.

**Hill, J.** The defendants appeal from a judgment by the trial court declaring: (1) that a corrective deed given by them to the plaintiffs was null and void and that the defendants had unlawfully trespassed by erecting a fence on the plaintiffs' property, and (2) that the defendants had unlawfully interfered with the plaintiffs' water supply.

The first issue on appeal is whether the plaintiffs accepted a corrective deed given by the defendants. The facts are as follows: The parties entered into a deposit receipt and sales agreement under which the plaintiffs were to purchase from the defendants a house and the land, approximately three-quarters of an acre, upon which the house was located. The conveyance was contingent upon the defendants conducting a survey of the land. At the time of closing, the survey had not yet been completed. Therefore, the defendants delivered to the plaintiffs a deed which contained a description of the property that the defendants had previously given to a third party. This deed stated that the property contained 155 feet of road frontage and consisted of slightly more than one acre of land.

After the survey had been conducted, the defendants' attorney delivered the survey and a second deed to the plaintiffs' attorney. This deed stated that the property contained about 120 feet of road frontage and a bowed rear boundary. The attorney signed the property transfer tax return as the plaintiffs' "attorney" and sent the second deed to the town clerk's office for recording. Two weeks later he mailed a copy of the second deed, but not the survey, to the plaintiffs.

Approximately eight months later, the plaintiffs instituted this action, asking that the second deed be declared null and void. They alleged that their attorney was not authorized to accept the second deed, and that the plaintiffs did not realize the significance of the second deed when they received it in the mail. They also alleged that the defendants unlawfully trespassed on their land by erecting a fence along the boundary described in the second deed.

The trial court declared that the second deed was null and void, and that the first deed has full force and effect. The court also ruled that the defendants trespassed by erecting a fence on the plaintiffs' property, and the court ordered the defendants to remove the fence. The court's findings and conclusions were as follows. Although the plaintiffs knew at the closing that they would receive a second deed after the survey was completed, they thought the second deed merely would translate into more technical language the boundary markings that were described in the first deed. They never entered into a contract with the defendants to accept a second deed that described substantially reduced boundaries. Neither did the plaintiffs accept the second deed by keeping it when they received it in the mail, because they never received a copy of the survey and they were not aware that the second deed's contents were substantially different from those of the original deed. Finally, the court found that the plaintiffs' attorney had no authority to accept the second deed for the plaintiffs or to sign the property transfer tax return, so the plaintiffs could not be deemed to have accepted the second deed on an agency theory.

The defendants contend that the evidence does not support the trial court's findings and conclusions. The defendants argue that there was an enforceable contract between the parties to accept a corrective deed. Further, they argue that the plaintiffs' attorney had the authority to accept the deed and that his acceptance of the deed binds the plaintiffs. Even if the attorney did not have such authority, the defendants contend that the plaintiffs accepted the second deed because they knew a second deed was forthcoming, they received that deed, and they did not file this complaint until eight months after they received the deed.

■ This Court will not set aside findings of fact unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, they are clearly erroneous. *Blanchard* v. *Villeneuve*, 142 Vt. 267, 269, 454 A.2d 1235, 1236 (1982).

■ Upon reviewing the record in this case, we cannot

conclude that the trial court's findings were clearly erroneous. The plaintiffs testified that although they knew a second deed would be forthcoming, they thought the second deed would contain substantially the same description of the property as the first deed. Therefore, there was no "meeting of the minds" necessary to find the existence of a contract to accept the second deed.

The evidence also supports the finding that the plaintiffs' attorney was not authorized by the plaintiffs to act as their agent in accepting a second deed that differed substantially from the first. One of the plaintiffs testified that the plaintiffs did not enter into any agreement with the attorney authorizing him to accept a second deed that substantially redefined the boundaries. The attorney himself testified that he did not have either oral or written authorization to accept such a deed. Thus, the attorney did not have either express or implied authority to accept the second deed for the plaintiffs. Neither did he have apparent authority. Although he may have been authorized to accept a second deed that was substantially similar to the first deed, the plaintiffs did not expect the second deed to be materially different from the first deed.

Finally, the evidence supports the finding that the plaintiffs did not accept the second deed by keeping it without complaint for eight months after receiving it from their attorney. In order for a principal to ratify an unauthorized act of an agent, the principal must have knowledge of the material facts that he or she is adopting. *Westinghouse Electric Supply Co. v. B. L. Allen, Inc.*, 138 Vt. 84, 95, 413 A.2d 122, 129 (1980). The plaintiffs in this case testified that they did not think the contents of the second deed would differ from the first, so they did not examine the deed when they received it in the mail. Since the plaintiffs were unaware of the material fact that the second deed differed substantially from the first, they could not be found to have ratified their attorney's unauthorized acceptance of the second deed.

The defendants' second argument is that the evidence does not support the trial court's finding that the defendants' use of a common spring unreasonably interfered with the plain-

tiffs' co-equal right to the water. The court found that as a result of the defendants' interference, the plaintiffs were forced to dig their own well to insure an adequate water supply. The court ordered that the defendants reimburse the plaintiffs for the expenses they incurred in digging the well, and for other expenses caused by the defendants' interference with the plaintiffs' water supply.

After reviewing the evidence, we conclude that the trial court's finding was not clearly erroneous. Therefore, we refuse to set the finding aside. *Blanchard* v. *Villeneuve, supra,* 142 Vt. at 270, 454 A.2d at 1237; V.R.C.P. 52(a).

■ Finally, the defendants argue that the court should not have awarded the plaintiffs the cost of installing a new well, but rather the cost of repairing the old pipeline. The cost of repairing the pipeline would have been adequate compensation if restoration of the pipe would have alleviated the plaintiffs' water supply problems. See *Bean* v. *Sears, Roebuck & Co.,* 129 Vt. 278, 282, 276 A.2d 613, 616 (1971) ("If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation."). The trial court found, however, that the plaintiffs' water problems were caused by the defendants' intentional interference with the plaintiffs' supply system. The court also found that the defendants intended to continue that interference; thus, the injury was not merely temporary. We think the trial court correctly ruled that the proper measure of damages was the cost of curing the harm, which was the cost of installing a new well.

*Affirmed.*