## Estate of Thomas C. Sawyer by the Howard Bank v. Charles E. Crowell and Crowell, England & Co.

[559 A.2d 687]

No. 85-192

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed March 24, 1989

*Jerome F. O'Neill* and *Geoffrey W. Crawford* of *Mancheser & O'Neill, P.C.*, Burlington, for Plaintiff-Appellee.

*David Putter* and *Norman Watts, Jr., Law Clerk (On the Brief)*, of *Putter & Unger Associates*, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant, Charles E. Crowell,[1] appeals a decision of the Chittenden Superior Court ordering him to pay the sum of $50,000 to the plaintiff, the Estate of Thomas C. Sawyer (Estate), an estate administrated under the jurisdiction of the Chittenden Probate Court. Attorney John Durrance served as administrator of the Estate from the death of Thomas Sawyer in 1980 until March of 1982. The superior court determined that defendant materially breached an agreement between the parties and was liable as a result. We affirm.

---

[1] Crowell, England & Co. was an unincorporated business which at the time of the events described herein was run solely by defendant Charles E. Crowell.

## I.

In 1980, defendant co-founded the Vermont Real Estate Investment Trust (VREIT). The stated purpose of VREIT was to provide a vehicle for investments in Vermont real estate ventures. Defendant ran VREIT singlehandedly as its president from its creation until January of 1982. This case arises out of the alleged misuse of money entrusted by the Estate to the defendant for investment during 1981.

In February of 1981, attorney Durrance contacted defendant to discuss investing $50,000 of the Estate's funds in high-grade commercial paper. On February 11, 1981, the two met and agreed that defendant would invest the $50,000 in six-month commercial paper through Crowell, England & Co., of which defendant was the sole principal. Mr. Durrance stressed that the money was to be invested conservatively in a national corporation and ruled out VREIT as an investment. On March 5, 1981, defendant purchased commercial paper issued by the Ford Motor Credit Corporation with a maturity date of August 12, 1981.

On August 12, 1981 defendant and Mr. Durrance met on the street and discussed the reinvestment of the Estate's funds. Mr. Durrance told defendant that he wanted to reinvest the money, including interest, for a shorter period of time in order to ensure that the proceeds would be available at the end of the year— the anticipated date of the closing of the Estate. Mr. Durrance asked defendant to reinvest the funds in high-grade commercial paper for thirty days with a continuous rollover. He did not, however, specify a particular investment. Defendant subsequently invested the funds in VREIT.

In mid-October, Mr. Durrance asked his secretary to inquire about the requirements for withdrawing the Estate's money from its investment with defendant. By letter dated October 14, 1981, the secretary asked defendant how to continue the investment and the procedure for withdrawal of funds. Defendant responded by letter dated October 15, 1981, addressed only to the secretary, that three days' written notice was required for withdrawal of the funds. Defendant also included in the letter the information that the funds were invested in VREIT commercial paper.

Upon receipt of this response, the secretary informed Mr. Durrance of the notice requirement for fund withdrawal, but did not

discuss with him the fact that defendant had invested the money in VREIT. Instead, she placed the letter in the file.

On December 31, 1981, after learning that funds belonging to another client had been invested in VREIT and that VREIT was having difficulty returning them, Mr. Durrance consulted the Estate file and found the October 15th letter. He immediately contacted defendant and demanded the return of the Estate's funds. Shortly thereafter, but before any money was returned to the Estate, VREIT filed a petition in bankruptcy.

The superior court concluded that the deposit of the Estate's funds in VREIT constituted a material breach of the agreement under which defendant had undertaken to invest the Estate's money. The court ordered that the Estate recover the $50,000 from defendant, less any amount recovered in bankruptcy, plus interest at 12% from August 12, 1981 (the date of the breach).

Defendant raises four issues on appeal. First, he contends that there was no "meeting of the minds" at the August 12th street meeting sufficient to establish a contract. Second, he argues that the October 15th letter from defendant to Mr. Durrance's secretary constituted notice to Mr. Durrance of the funds' investment in VREIT, and that by not acting at such time to disaffirm the investment, Mr. Durrance ratified it. Third, defendant states that this Court cannot uphold any finding of liability on a theory of promissory estoppel. And finally, defendant claims that the trial court's determination of damages was improper. We shall address these issues in turn.

## II.

Defendant argues that because the trial court found that the two parties interpreted the August 12th street meeting quite differently, there was not a sufficient meeting of the minds to establish a contract. See *Evarts* v. *Forte*, 135 Vt. 306, 309, 376 A.2d 766, 768 (1977). The court found that on August 12, 1981, Mr. Durrance and defendant agreed to invest the Estate's funds in high-grade commercial paper. Defendant subsequently invested the funds in VREIT, which the court found was not the equivalent of high-grade commercial paper. Thus, the court concluded that defendant breached the August 12th agreement with Mr. Durrance.

" '[F]indings of fact and conclusions of law by the trial court will not be disturbed on appeal unless clearly erroneous when viewed in the light most favorable to the prevailing party.' " *Murray* v. *J & B International Trucks, Inc.*, 146 Vt. 458, 466, 508 A.2d 1351, 1356 (1986) (quoting *Finley* v. *Williams*, 142 Vt. 153, 155, 453 A.2d 85, 86 (1982)). In the performance of his duties, it is incumbent upon a stockbroker to follow the instructions of his customer. *Richardson* v. *Shaw*, 209 U.S. 365, 377 (1908) (a broker is but an agent, and is bound to follow the directions of his principal); see also *E. A. Strout Realty Agency, Inc.* v. *Wooster*, 118 Vt. 66, 70, 99 A.2d 689, 692 (1953) (same standard for a real estate broker). In the instant case, the record indicates that sufficient evidence existed to support the trial court's finding that there was a meeting of the minds between Mr. Durrance and the defendant at the August 12th street meeting with respect to the investment of the Estate's funds. Therefore, this finding will not be disturbed on appeal.

## III.

Defendant argues that he is not liable for any breach, contending that where financial investments are concerned, a customer is deemed to have ratified a wrongful investment upon his failure to repudiate it promptly after he becomes chargeable with knowledge thereof. In support, he urges us to accept his conclusion that Mr. Durrance was chargeable with knowing the funds were invested in VREIT when his secretary received the October 15th letter. Because Mr. Durrance was then chargable with the knowledge, the argument proceeds, his failure to repudiate the VREIT investment at that time constituted ratification of it.

As a general rule, the knowledge of an agent acting within the scope of his or her authority is chargeable to the principal, regardless of whether that knowledge is actually communicated. See *Solomon* v. *Design Development, Inc.*, 143 Vt. 128, 131, 465 A.2d 234, 236 (1983) (notice to agent is notice to principal); Restatement (Second) of Agency § 272 (1958).[2] Thus, in order for Mr.

---

[2] Defendant bases part of his argument on the contention that the secretary's authority was "apparent" if not truly "actual." His reliance on this distinction is misplaced, however. Actual authority is that conveyed by the principal directly to the agent, while apparent authority is the scope of an agent's authority manifested by the principal to a third party, not the agent. Restatement (Second) of Agency §§ 7 and 8 (1958). Thus, although the secretary's actions in writing the

Durrance to be chargeable with knowledge of the VREIT investment on October 15th, it was necessary for defendant to establish that it was within the scope of the secretary's authority to obtain that information. This, defendant failed to do.

Although the trial court did not directly address the issue in terms of "scope of authority," it clearly found that with respect to the correspondence of October 14-15, the secretary's authority did not extend to inquiring where the Estate's funds were invested:

> No confirmation [of the reinvestment] was sent by Crowell to Durrance, and Durrance did not ask for any . . . . [Durrance] has asked his secretary simply to obtain specific information, and she had done so to the extent of his inquiry.

Finding of fact No. 14. The court then concluded:

> Durrance did not ask his secretary to inquire where the funds had been invested. His only inquiry was how to continue the investment and how long it would take to withdraw the funds . . . . Durrance had neither actual notice of the VREIT investment nor constructive notice of the breach.

■ The existence and extent of an agent's authority is a question of fact. *Fournier* v. *Burby,* 121 Vt. 88, 91, 148 A.2d 362, 364 (1959); *N. Pelaggi & Co.* v. *Orient Ins. Co.,* 102 Vt. 384, 397, 148 A. 869, 873 (1930) (authority is issue of fact unless facts themselves are not in dispute). There is no evidence in the record that the secretary knew the money should not have been invested in VREIT, or that there was any restriction on its investment. Without such knowledge, she had no reason to bring that information to Mr. Durrance's attention. As defendant has made no showing that the secretary had any authority extending beyond the inquiry contained in her letter, the court's finding is not clearly erroneous, V.R.C.P. 52(a), and we will not disturb it here. Since the secretary's knowledge of the VREIT investment did not arise within the scope of her authority, Mr. Durrance cannot be charged with such knowledge.

letter and requesting information might "reasonably appear" to defendant to be actions done within her scope of authority, he offered no evidence to prove that her authority to do more than inquire as to how to continue the investment and withdraw funds was communicated to him by Mr. Durrance, the principal.

■ Defendant next argues that by doing nothing from October 15 until December 31, Mr. Durrance ratified the contents of the October 15th letter to the secretary. This argument is premised on the doctrine of ratification, under which a principal may affirm a prior action by an agent which did not bind the principal but was purportedly done on his or her account, with the ratification "relating back" to the time of the actual act. See *Couture* v. *Lowery,* 122 Vt. 239, 245, 168 A.2d 295, 299 (1961) (subsequent ratification is equivalent to prior authority); Restatement (Second) of Agency § 82. It is clear that if Mr. Durrance ratified his secretary's actions in obtaining the additional information, he would be chargeable with that knowledge as of October 15.

■ Defendant argues, in essence, that Mr. Durrance's silence after the October 15th letter was received in his office amounted to ratification of its contents. While we accept the proposition that in certain circumstances it is possible for silence to be construed as an affirmance resulting in ratification, see Restatement (Second) of Agency § 94 comment a, we do not reach that conclusion here. Affirmance alone will not necessarily bind a principal who acts upon incomplete or inaccurate information. The law is clear that for ratification of an unauthorized act to occur so as to bind the principal, he or she must have *actual knowledge* of the material facts being adopted at the time affirmance occurs. See *Page* v. *Suraci,* 145 Vt. 89, 93, 483 A.2d 601, 603 (1984); *Westinghouse Electric Supply Co.* v. *B.L. Allen, Inc.,* 138 Vt. 84, 95, 413 A.2d 122, 129 (1980). Absent such knowledge, an affirmance may be avoided upon the principal's learning the material facts. Restatment (Second) of Agency § 91.

In this case, the court concluded that Mr. Durrance had neither actual nor constructive knowledge of the VREIT investment at the time his secretary received the October 15th letter. As defendant has not met his burden of showing that this conclusion was not supported by the findings of fact, there is no error. See *Dartmouth Savings Bank* v. *F.O.S. Associates,* 145 Vt. 62, 66, 486 A.2d 623, 625 (1984). Since Mr. Durrance moved promptly to disaffirm the wrongful investment as soon as he received actual notice of it on December 31 (a fact not disputed by defendant), we

conclude that he thereby avoided whatever affirmance of the breach which could have arisen from his earlier silence.[3]

## IV.

Defendant contends that this court cannot uphold the finding of liability on a theory of promissory estoppel, since there was no detrimental reliance upon a broken promise. In light of our conclusion that an express contract governed the investment of August 12, 1981, it is not necessary to invoke this doctrine. See *Larose* v. *Agway, Inc.*, 147 Vt. 1, 4, 508 A.2d 1364, 1366 (1986) (doctrine is applied where " 'reliance is the basis, and detriment is the justification,' " but no bargain is involved) (quoting *Overlock* v. *Central Vermont Public Service Corp.*, 126 Vt. 549, 553, 237 A.2d 356, 359 (1967)).

## V. .

Defendant claims that the trial court erred in its assessment of damages against him, urging as error its failure to apply the doctrines of avoidable consequences and "efficient intervening cause," and its award of prejudgment interest upon a claim defendant could not calculate with reasonable certainty prior to judgment.

■ Under contract law, the nonbreaching party in a contract dipute has a duty to make reasonable efforts to mitigate damages arising from the breach. *Sullivan* v. *Lochearn, Inc.* 143 Vt. 150, 153, 464 A.2d 745, 746 (1983). Defendant contends that applying this principle (which he terms "avoidable consequences," but is often referred to as "mitigation of damages," see *Sheldon* v. *Northeast Developers, Inc.*, 127 Vt. 15, 17, 238 A.2d 775, 776 (1968)), Mr. Durrance should be precluded from recovering any damages that could have been avoided had he promptly withdrawn the funds from VREIT after receipt of the October 15th letter.

The duty to mitigate will only be enforced to the extent mitigation is possible. *Sullivan,* 143 Vt. at 153, 464 A.2d at 746. Given

---

[3] We acknowledge, as we stated just above, that in certain circumstances silence may be construed as an affirmance which could result in ratification of a breach. We query, however, whether the affirmance of a breach can be inferred from silence where the "affirmer" has no knowledge of the facts material to the breach.

our conclusion that Mr. Durrance could not be charged with knowledge of the breach until December 31, 1981, his immediate (albeit unsucessful) action at that time to recover the funds was sufficient to fulfill any duty to mitigate which may have arisen.

Defendant next asserts that the doctrine of "efficient intervening cause" precludes any award for losses due to the acts of third persons. In particular, he claims that he should not be held liable for the facts that VREIT had insufficient assets to pay both the Estate and another large creditor, that VREIT's appointed trustees filed for bankruptcy, and that the Estate stipulated to accept less than all of its outstanding principal in the bankruptcy proceeding. This claim, which defendant appears to base on the tort defense of intervening superceding cause, here is essentially one of foreseeability.

According to the rule of foreseeability in contract damages, consequential damages are recoverable where they may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract. *Albright* v. *Fish*, 138 Vt. 585, 590, 422 A.2d 250, 254 (1980). Here, after Mr. Durrance made it clear to defendant that he was concerned about the high-risk nature of VREIT and that he instead wanted the Estate's money invested in high-grade commercial paper, defendant cannot now claim that the loss was unforeseeable. Further, he can find no refuge in the Estate's conduct at the bankruptcy proceeding, for such conduct was reasonably foreseeable, given defendant's breach.

Defendant's final claim is that the award of prejudgment interest was erroneous because it was not reasonably calculable before judgment. While his concern that such awards might interfere with settlement agreements is laudable, prejudgment interest is expressly authorized under V.R.C.P. 54(a), and where, as here, the loss was "not so contingent as to be unsupportable," the award was within the discretion of the trier. *Hall* v. *Miller,* 143 Vt. 135, 146, 465 A.2d 222, 228 (1983).

*Affirmed.*