SUSSEX COUNTY, DELAWARE, a political subdivision of the State of Delaware, Defendant Below, Appellant,

and

Frank Blake, Jr., Defendant Below,

v.

E. Stanley MORRIS, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: May 19, 1992.
Decided: June 26, 1992.
Rehearing Denied July 30, 1992.

---

**3.** Of course, we express no opinion whether punitive damages are warranted in this particu-

lar case.

Nancy E. Chrissinger (argued), and Michael I. Silverman, Tybout, Redfearn & Pell, Wilmington, for appellant.

I. Barry Guerke, Parkowski, Noble & Guerke, P.A., Dover, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en Banc.

MOORE, Justice.

This appeal from the Superior Court involves the scope of immunity conferred upon a county official under the County and Municipal Tort Claims Act, 10 *Del.C.* § 4010–4013 (the "Act"), and the agency relationship of that official to the county. The appellee, E. Stanley Morris ("Morris"), sued Sussex County, Delaware ("Sussex"), and Frank Blake, Jr. ("Blake"),[1] a Sussex constable, for injuries Morris sustained while in Blake's custody and being conveyed in Blake's own automobile to the Delaware State Hospital (the "State Hospital") pursuant to an involuntary commitment order. Sussex claims that it was entitled to governmental immunity, and

---

1. Mr. Blake is not a party to this appeal.

that Blake, in any event, was not its agent. The jury returned a general verdict against Sussex, and in Morris' favor, of $100,000. Sussex appeals, also contending that it was entitled to a remittitur of $15,130 in connection with certain personal injury protection ("PIP") coverage which Morris was entitled to receive under Blake's automobile insurance. In our opinion the evidence fully supports the jury's finding that Blake was Sussex's agent. Ministerial acts of the type performed by Blake here, and the use of his automobile under the facts of this case, exclude his conduct from immunity under the Act. While the trial court's failure to grant the remittitur was erroneous, it was harmless under all of the circumstances. Accordingly, we affirm.

## I.

### A.

The essential facts are not in dispute. On July 16, 1984, Morris was released from the State Hospital, an institution for the mentally ill, after a 12 day involuntary civil commitment. This was Morris' fourteenth admission to that hospital. He was diagnosed as being alcohol dependent. Medical testimony indicated that in his previous hospitalizations Morris had been diagnosed as suffering from psychosis, schizophrenia and paranoia. Moreover, his underlying psychosis was affected by the disease of alcoholism. Morris had, at times, threatened to kill his estranged wife and himself. On July 17, 1984, less than 24 hours after his release, Morris was again involuntarily committed to the State Hospital for 72 hours. He was held at Milford Memorial Hospital ("Milford Memorial") pending transfer to the State Hospital. To complete this transfer, an employee at Milford Memorial contacted Blake, one of several Sussex constables responsible for transporting mental patients.

Blake arrived at Milford Memorial Hospital driving his own family car—a 1981 4-door Oldsmobile.[2] Accompanying Blake were his brother and father-in-law. This was not the first time that Blake had taken Morris to the State Hospital. Blake handcuffed Morris' hands in front,[3] and shackled his legs. Morris sat in the back seat of Blake's car, with his seat belt fastened, and the door locked. The back doors of Blake's car had not been modified in any way. Therefore, unlike a police car, the rear door locks and handles were fully operational.

During the trip Morris stated several times that he wished he were dead.[4] After making these statements, Morris said he was going to take a nap. Then, unexpectedly, Morris unfastened his seat belt, unlocked the car door, opened the door, and jumped out of the moving car. There was evidence, which the jury could accept, that Morris was experiencing a psychotic episode at that time. He was seriously injured and spent over three months in the hospital undergoing several operations. He has a 45% permanent impairment of one foot, a limp, and is unable to return to his former work in construction.

### B.

Morris sued Blake, Sussex and the City of Milford ("Milford"). Summary judgment was granted to Milford. Blake's motion for summary judgment was granted as to allegations of simple negligence, but denied as to wantonness. Sussex's motion for summary judgment was granted only as to its alleged failure to adequately train and equip Blake. The trial court denied summary judgment on the issues of governmental immunity and agency. *See Morris v. Blake*, Del.Super., 552 A.2d 844, 849–50 (1988). Sussex again moved for summary judgment after this Court's decision in *Sadler v. New Castle County*, Del.Supr., 565 A.2d 917 (1989). The Superior Court

---

**2.** There is evidence in the record that, at some time, Blake owned a retired police car that was equipped for the transportation of prisoners. It is unclear, however, whether Blake owned this car on July 17, 1984.

**3.** Morris had been handcuffed from the rear but asked to be handcuffed in the front so that he would be able to smoke during the trip.

**4.** Thus, Sussex's claim to us that, although Morris stated he wished he were dead, "he did not express any suicidal threats" is rather puzzling.

concluded that its prior decision was implicitly affirmed by *Sadler* and again denied Sussex County's motion for summary judgment. *See Morris v. Blake,* Del.Super., C.A. No. 85C–JL–15, 1990 WL 47355, Ridgely, J. (Mar. 20, 1990) (ORDER).

Before trial, Sussex filed a motion *in limine* concerning the admissibility of certain medical expenses incurred by Morris. Sussex County claimed that Morris was eligible for personal injury protection ("PIP") under Blake's automobile insurance policy in the amount of $25,000. Blake's insurance carrier denied coverage and Morris brought suit which was subsequently settled for $15,000.[5] After accounting for attorney fees and costs, the settlement netted Morris $9,870 which was applied towards Morris' hospital bill. The trial court, over Sussex's objection, admitted the unpaid portion of Morris' hospital bill into evidence.[6]

At the close of the trial, Sussex moved for a directed verdict claiming that Blake was not an agent of the County and, therefore, it was not liable for his actions. The trial court reserved decision on the motion. The jury returned a general verdict against Sussex in the amount of $100,000. Sussex moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The latter motion also was based on the agency issue. Sussex also sought a remittitur of $15,130. Sussex contended that this is the difference between the amount by which Morris' hospital bill was reduced ($9,870) and the amount by which it should have been reduced ($25,000). This was the same issue the trial court earlier ruled upon in Sussex's motion *in limine.* Each of the motions was denied.

## II.

■ Sussex asserts that it is immune from any liability for Morris' injuries under the Act. Specifically, Sussex claims that

Blake's actions were discretionary and, therefore, immune from liability under the Act. Even if Blake's actions were not discretionary, Sussex contends that they remain immunized under the Act. In our opinion Blake's selection and equipment of the car he used to transport Morris, acts which were found to be negligent by the jury, were not discretionary, but ministerial. Moreover, the negligent use of such a motor vehicle under these circumstances divests Sussex of immunity. *See* 10 *Del.C.* § 4012(1).

### A.

The Superior Court's denials of Sussex's motions for summary judgment turned entirely on issues of statutory construction. These are purely legal questions over which we exercise *de novo* review. *Moses v. Board of Education of the New Castle County Vocational Technical School District,* Del.Supr., 602 A.2d 61, 63 (1991). Thus, we will review the Superior Court's decision to determine whether the trial judge erred in formulating or applying legal precepts. *Gilbert v. El Paso Co.,* Del. Supr., 575 A.2d 1131, 1142 (1990).

### B.

Resolution of this issue requires an analysis of two sections of the Act. Subject to certain exceptions, Section 4011(a) provides, generally, that counties are immune from suit on all tort claims seeking recovery of damages. Section 4012 of the Act enumerates specific exceptions to this general rule of immunity. The activities listed in Section 4012 are an exclusive list and "are the only activities as to which municipal immunity is waived." *Fiat Motors of North America, Inc. v. Mayor and Council of the City of Wilmington,* Del. Supr., 498 A.2d 1062, 1066 (1985). Nonetheless, Section 4012 must be read in context and the facts of each case applied

---

5. Blake's insurer claimed that it was not liable for Morris' injuries since they were intentionally inflicted. That position is inexplicable in view of the fact that Morris had been involuntarily committed to the State Hospital as mentally ill.

6. Thus, the bill presented to the jury had already accounted for the $15,000 settlement with Blake's insurer less attorney's fees and costs. Sussex argued that $25,000, the full amount of PIP coverage under Blake's policy, should have been deducted from the hospital bill.

thereto. *Hedrick v. Blake*, 531 F.Supp. 156, 158 (D.Del.1982).

The Superior Court found that Sussex's liability for Blake's act was based upon Section 4012(1), which states:

> A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury, or death in the following circumstances:
>
> (1) In its ownership, maintenance, or use of any motor vehicle.... or other machinery or equipment whether mobile or stationary.

*Morris*, 552 A.2d at 849–50.

Sussex argues that it is absolutely immune under the "discretionary function" provision of Section 4011(b)(3), which states in pertinent part:

> (b) *Notwithstanding § 4012* of this title, a governmental entity shall not be liable for any damage claim which results from:
>
> \*   \*   \*   \*   \*   \*
>
> (3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

10 *Del.C.* § 4011(b)(3) (emphasis added).

There is a paucity of helpful authority interpreting the provisions of the Act now before us. Both parties rely primarily on *Sadler v. New Castle County*, Del.Supr., 565 A.2d 917 (1989). There, the appellant was injured when he accidentally fell over Brandywine Falls and struck his head on some rocks. The accident victim sued New Castle County, claiming that his rescuers, all county employees, were negligent in selecting unduly hazardous means to remove him from the river, thus aggravating his injuries. We affirmed the trial court's ruling that the rescuers' decision to carry Sadler across the river, rather than up a cliff, was purely a discretionary decision and, therefore, immune from liability under Section 4011(b)(3) of the Act. Of particular importance to our decision was the fact that Sadler made no claim that the equipment used by the rescuers was in any way defective.[7] We noted that "[t]he equipment ... used ... was incidental to the underlying judgment [to transport Sadler down the river]." *Id.* at 922. "There [was] no claim that other more suitable equipment *could have been used.*" *Id.* (emphasis added). We concluded that there was no basis for application of the Section 4012 exception because there was no "causative relationship between the ... equipment ... and the injuries [sustained]....." *Id.* Implicit in *Sadler* is the principle that use of defective or inappropriate machinery or equipment may divest a governmental entity of immunity under Section 4012, irrespective of Section 4011(b)(3).

Both parties assert that *Sadler* is controlling and supports their position. Specifically, Sussex contends that Blake's actions, like the rescuers' in *Sadler*, were discretionary and, therefore, immune from liability under Section 4011. According to Sussex, Blake made a number of discretionary decisions in transporting Morris that caused his injuries. For example, Blake chose to handcuff Morris in the front as opposed to the back and used a car with back doors that could be unlocked and opened from the inside.

Sussex reads the term "discretionary function," as used in Section 4011, far too broadly. The immunity granted to discretionary acts does not extend to every circumstance in which some element of choice is involved. Were that the case, virtually every act would be considered discretionary since there are few that do not involve some element of choice. Practically every human movement, short of an eye blink or a heart beat, involves some degree of voluntariness and choice. To grant immunity based solely upon the existence of a choice would run counter to logic, prece-

---

**7.** In addition to providing an exception for motor vehicles, Section 4012(1) provides an exception to immunity for injuries caused by the ownership, maintenance or use of "special mobile equipment."

dent, and the clear legislative intent underlying the Act. While the Act does not attach a precise term to describe acts or functions which are non-discretionary in nature, a commonly used antonym for the term "discretionary" is "ministerial."[8] While the ambiguities of language prevent us from formulating a more precise term, we use "ministerial" to describe those acts which, may involve an insignificant element of choice, but which the legislature has not insulated from immunity. From a legal standpoint, we consider Blake's actions to be ministerial in nature and, therefore, not immune from liability.

Many courts have struggled to distinguish discretionary acts, which are subject to immunity, from those which are ministerial and thus not immune from suit. Some courts have established multifaceted elaborate tests to make this determination. Such efforts inevitably pose more questions than they answer. As one court stated:

> Judicial attempts to grapple with what has become a multi-addered medusa has [sic] resulted in confusion and uncertainty all too painfully apparent to legal scholars, and an inability on the part of the courts to evolve any definitive guidelines....

*Vanderpool v. State*, Okla.Supr., 672 P.2d 1153, 1154–55 (1983).

■ Rather than attempt to explicate terms as nebulous as "discretionary" and "ministerial," we adopt the general definition of "ministerial" set forth in the Restatement (Second) of Torts. An act is ministerial if the "act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act...." Restatement (Second) of Torts § 895D cmt. h (1979). The distinction between discretionary and ministerial acts is always one of degree. *Id.*

Applying those principles here, we conclude that Blake's selection and equipment of the car he used to transport Morris were ministerial acts. They had little bearing of importance upon the validity of his official conduct. Blake was empowered as a Sussex Constable to transport mentally ill patients. The validity of this authority is not at issue and is entirely distinct from any personal decision Blake made respecting his choice of motor vehicle. Indeed, the Restatement enumerates many acts that ordinarily are considered ministerial. One example is the care of prisoners.[9] *Id.*

We have recognized that the term "discretionary governmental functions" extends beyond mere policy decisions to include "the manner or method selected by governmental employees to discharge the police power." *Sadler*, 565 A.2d at 922. We do not believe, however, that this language is to be read as expansively as Sussex contends. Indeed, one must look to the entire *Sadler* opinion to understand how this broad language is to be interpreted in practice. In *Sadler*, we found that immunity existed because the rescuers' discretionary decisions were entirely distinct from the use of the rescue equipment. In other words, it was not *what* was used, but *how* it was used that allegedly caused the plaintiff's injuries. Here, Morris' injuries were a direct result of *what* was used, a car indisputably ill-equipped for the transportation of mentally ill passengers.

■ Finally, Sussex's claim that it still enjoys immunity, because Morris' injuries did not result from the ownership, maintenance or use of a motor vehicle, is unpersuasive. Sussex contends that because Blake's car was mechanically sound, the motor vehicle exception to the immunity statute is inapplicable. *See* 10 *Del.C.* § 4012(1).

8. Ministerial acts are also referred to as "operational."

9. Although not a prisoner in the sense of the criminal law, it is uncontroverted that he had been involuntarily deprived of his liberty and was in the custody of a Sussex official at the time of injury. In every respect this implicates the very nature of the term "prisoner." *See* Black's Law Dictionary 1075 (5th ed.1979). Thus, Morris clearly was a prisoner in civil custody.

That is a misconstruction of the Act. The motor vehicle exception in Section 4012(1) applies when the vehicle itself is the instrument of the harm. Here, it could not be more obvious that Morris' injuries were a direct result of the improperly equipped automobile Blake used. The Act admits of no immunity under such circumstances. *Id.; Sadler*, 565 A.2d at 922.

### III.

■ Sussex moved for a directed verdict on the ground that Blake was not its agent at the time Morris was injured. The standard of review from a denial of a motion for a directed verdict is whether the evidence and all reasonable inferences that can be drawn therefrom, taken in the light most favorable to the non-moving party, raise an issue of material fact for consideration by the jury. *Russell v. Kanaga*, Del. Supr., 571 A.2d 724, 731 (1990). Post-trial motions are generally reviewed for an abuse of discretion. However, it has been held that when a post-trial motion is directed solely to the weight of the evidence in a jury case, this Court is bound by the jury verdict if it is supported by the evidence. *Storey v. Camper*, Del.Supr., 401 A.2d 458, 465 (1979) (citing Del. Const. art. IV, § 11) (motion for new trial).

Essentially, Sussex challenges the jury's factual determination on the issue of agency. Sussex points to no error of law (*e.g.*, improper jury instruction on law of agency) but, instead, merely asserts that "the plaintiff did not sustain his burden of showing that Mr. Blake was an agent of Sussex County...." Opening Brief at 36. It is well settled that questions of agency are not subject to absolute rules but, rather, turn on the facts of the individual case. *E.I. duPont de Nemours & Co. v. I.D. Griffith, Inc.*, Del.Supr., 130 A.2d 783, 784 (1957); *see also Estate of Sawyer v. Crowell*, 151 Vt. 287, 559 A.2d 687 (1989) (existence of agency is question of fact); *Henderson v. Charles E. Smith Management, Inc.*, D.C.App., 567 A.2d 59 (1989) (same); *Beckenstein v. Potter and Carrier, Inc.*, 191 Conn. 120, 464 A.2d 6 (1983) (same). Thus, the only issue before us is whether a reasonable juror could conclude that Blake was in fact an agent of Sussex. We find that the jury's verdict regarding Blake's agency relationship with Sussex is clearly supported by the evidence.

Sussex processed Blake's application to be a constable, appointed him with the knowledge that he would transport mental patients, notified hospitals of his availability, and provided him with a badge, while retaining the power to discipline Blake, or suspend or revoke his authority. There is no dispute that the trial court properly instructed the jury on the law of agency, and specifically as to what the jury must find in order to conclude that an agency relationship existed at the time of the incident. Under the circumstances there was no error of law. The jury's verdict was fully supported by the evidence.

### IV.

■ Finally, we address the admission into evidence of Morris' medical bill without deducting the full $25,000 PIP coverage for which Sussex claims he was eligible. The trial court admitted Morris' hospital bill into evidence with a deduction of only $9,870, the amount Morris netted from the settlement of his "disputed" PIP claim. Sussex moved for a remittitur on this issue, which the trial court denied. While it was error, we consider it harmless under the circumstances.

> Under the provisions of 21 *Del.C.* § 2118(g):
>
> Any person *eligible for benefits* described in paragraph (2) or (3) of subsection (a) of this section ... is precluded from pleading and/or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation is available under paragraph (2) or (3) of subsection (a) of this section without regard to any elective reductions in such coverage and *whether or not such benefits are actually recoverable.*

(Emphasis added).

Sussex asserts that, under this statute, Morris was "PIP eligible" for the full amount of Blake's insurance, *i.e.*, $25,000. Morris responds that, because Blake's in-

surer denied coverage under a policy exclusion, and Morris subsequently settled the "disputed" claim for a lesser amount, only that amount which Morris netted from the settlement should be reduced from his medical bills.

While we do not doubt that Morris' counsel settled the PIP claim in good faith, we do question the reasonableness of the insurer's position. Blake's insurer denied PIP benefits to Morris on the ground that Morris' injuries were due to his "intentional" conduct and, thus, not compensable under Blake's policy. Under all of the circumstances here, particularly the fact that Morris was then under an involuntary commitment as a mentally ill person, we consider the insurer's position indefensible. Sussex should not have been subjected to the potential costs of that situation. However, any error in this regard was harmless. The jury returned a general verdict for $100,000. Morris' medical expenses totaled approximately $54,000 and, after accounting for the PIP settlement, approximately $44,000 in medical expenses were admitted into evidence. We find that the trial court's refusal to deduct an additional $15,130 from Morris' hospital bill had no material effect on the jury's verdict.

The judgment of the Superior Court is AFFIRMED.

VEASEY, Chief Justice (concurring):

I concur in the result and the holding of the majority opinion that the ministerial decisions made by Blake (*e.g.*, to transport Morris in Blake's own car, which was not specially equipped, and to handcuff Morris in front) were not "discretionary functions" within the meaning of 10 *Del.C.* § 4011(b)(3). I also agree that this case is distinguishable from this Court's relatively recent decision in *Sadler v. New Castle County*, Del.Supr., 565 A.2d 917 (1989). If the instant case were indistinguishable from *Sadler*, as the dissent contends, we would have to consider a question which was not briefed or argued in the instant case—whether or not to overrule *Sadler*. Happily, the facts of this case do not require us to consider overruling *Sadler*.

Any reconsideration of *Sadler* in future cases might implicate a revisiting of the interesting statutory construction question which turns on the intent of the General Assembly in resolving the tension between allowing redress to those injured by the torts of municipal agents (*see* Restatement (Second) Torts 2d, *Special Note on Governmental Immunity* at p. 395), and the economic interests of governmental entities in curbing litigation costs, exposure to large damage awards and the consequent drain on public resources arising out of insurance costs. *See Fiat Motors of North America, Inc. v. Mayor and Council of the City of Wilmington*, Del.Supr., 498 A.2d 1062, 1067 (1985).

The policy issues inherent in the balancing of this tension are legislative, not judicial, policy questions. As this Court noted in *Fiat*, courts should "only [apply] the strict language of the statute itself in deciding whether an activity is immune or is not." *Id.*, 498 A.2d 1067 n. 8. Accordingly, in *Fiat* the Court attached as an appendix to the Opinion the text (including preamble) of the County and Municipal Tort Claims Act (the "Act") as originally enacted in 62 Del.Laws. ch. 124 (July 5, 1979). 498 A.2d at 1068–70. The Act was apparently based upon a legislative policy "reestablishing the principle of sovereign immunity for counties and municipalities," citing the expressed concern for the "cost of insurance, when obtainable, [which] has reached proportions unanticipated by local government as a result of the multiplicity of lawsuits filed against local governments in recent years." *Id.* at 1068–69.

It is clear that in 1979 the General Assembly intended to overrule certain judicial decisions in order "to dispense with the common law distinction between governmental activities and proprietary activities of municipal entities." *Id.* at 1067. In implementing that legislative policy, the Act expressly permitted suits against governmental entities (*e.g.*, for negligence arising out of "ownership, maintenance or use of any motor vehicle, ... or other machinery or equipment...."). 10 *Del.C.* § 4012(1).

Section 4012(1) is the basis of liability here, but it was not in *Sadler. See* 565 A.2d at 922. What is at issue here, as well as in *Sadler,* is the proper construction of 10 *Del.C.* § 4011(b)(3) which immunizes counties and municipalities from liability which would otherwise attach under Section 4012 if the claim "... results from ... the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused...."

I agree with the majority that Blake's activities here fall outside any reasonable definition of "discretionary function" within the meaning of the statute. Yet, as the majority opinion notes, the term "discretionary" and its antonym "ministerial" are "nebulous" and need not be explicated. I likewise agree with the majority opinion that efforts by some courts to establish tests or guidelines to divine the proper meaning of these murky concepts have led to frustration.

If a proper case should arise in the future where we would be called upon to reexamine the scope of the term "discretionary function," we may well consider whether the General Assembly intended to embrace or depart from the scope of the "discretionary function" exception as found in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), which contains language similar to the Delaware Statute. The FTCA grants immunity in a case involving:

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.*

(Emphasis supplied). The body of case law under the FTCA is not exactly clear, but it is a body of law we may wish to consult if the issue is presented in future cases.

It has been held that the discretionary function test under the FTCA depends generally on whether the act or omission occurred at policy or planning level or whether it occurred at an operational level. *See, e.g., Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953); *Nevin v. U.S.,* 696 F.2d 1229 (9th Cir.1983), *cert. denied,* 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983). *See also, Restatement (Second) Torts* § 895B, comment d at p. 403 (re "administrative function"). Yet, some cases suggest that actions which do not rise to the dignity of policy or planning decisions may be "discretionary functions" under the FTCA. *See, e.g., United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (distinction not mentioned); *Downs v. United States,* 522 F.2d 990, 997 (6th Cir.1975) (planning/operational level test rejected because "status of the official making a judgment" was "not a sufficient test for determining whether a government employee's actions are within the exception.... Rather the basic question ... is whether the judgments of a Government employee are of 'the nature and quality' which Congress intended to put beyond judicial review."); *Blessing v. United States,* 447 F.Supp. 1160, 1173 (E.D.Pa.1978) (the "planning/operational distinction, instructive as it may be on a theoretical level, can become exceedingly problematic when applied to concrete facts"); *Bradley v. United States,* 615 F.Supp. 206, 208–09 (W.D.Tenn., W.D. 1985) (continued use of the distinction "is of questionable propriety in that the most recent Supreme Court pronouncement [*Varig*] on the discretionary function exception fails even to mention the test"), *aff'd, Pooler v. U.S.,* 787 F.2d 868 (3rd Cir.1986).

This Court in *Sadler* held that the rescuers' decision to transport the victim across the river rather than up the cliff was a "discretionary function" because "the legislature intended to include within the scope of the Act's immunity not only the policy decision to undertake a function ... [T]he Act's immunity *prima facie,* extends to the *manner or method* selected

by the governmental employees to discharge the police power." 565 A.2d at 922 (emphasis supplied). We hold today that Blake's decisions were "ministerial" or "operational" and, therefore, not immune. One could also argue that the decision of the rescuers in *Sadler* was "ministerial" or "operational."

It is unnecessary for us to analyze precisely the current body of law under the FTCA or to decide if that amorphous judicial gloss (or any other authority) is persuasive in determining whether *Sadler* should be approved, overruled or limited. Those issues are left open, in my view, for another day.

HORSEY, Justice, dissenting:

On July 16, 1984, plaintiff E. Stanley Morris, subject to a 72–hour involuntary commitment for alcohol related mental illness, while handcuffed, shackled and feigning sleep in the back seat of Sussex County Constable Frank Blake's car, surprised Blake by undoing his seatbelt, unlocking the door, and hurling himself out onto the highway while the car was travelling at approximately forty miles per hour. Not surprisingly, Morris was seriously injured. Following trial, a jury found defendant-appellant Sussex County liable to Morris in the amount of $100,000 for the negligence of its agent in allowing Morris to attempt suicide. In affirming this bizarre result, the majority makes at least two fundamental errors of statutory construction.

First, the majority unnecessarily confuses the interaction of 10 *Del.C.* §§ 4011 and 4012, and relies upon *Sadler v. New Castle County,* Del.Supr., 565 A.2d 917 (1989), as its authority for doing so. Thus, the majority states, "Implicit in *Sadler* is the principle that use of defective or inappropriate machinery or equipment may divest a governmental entity of immunity under Section 4012, irrespective of Section 4011(b)(3)." Were such a proposition to be truly implicit in *Sadler,* and I think it is not, *Sadler* would be in direct contradiction to the unequivocal language of the statute. As the majority notes and then attempts to distinguish (unsuccessfully in my view, through the use of self-fulfililng definitions), the provisions of section 4011(b) grant immunity *"notwithstanding"* the specific exceptions of section 4012. Accordingly, where a damage claim arises from the performance or failure to perform a discretionary function, a governmental entity is immune, *regardless* of whether any of the exceptions enumerated in section 4012 are satisfied. 10 *Del.C.* § 4011(b). Here, a holding that Blake's negligent acts were discretionary would mandate immunity, regardless of whether those acts involved a motor vehicle under section 4012(1).

Second, rather than give effect to the plain meaning of the crucial statutory term, "discretionary," the majority resuscitates the common law that this statute was specifically intended to abrogate. *Fiat Motors of N. Am., Inc. v. Mayor and Council of Wilmington,* Del.Supr., 498 A.2d 1062, 1064–67 (1985) ("It is the Court's duty to interpret the Act as it is written, rather than perpetuate theories or views which may previously have been expressed by the Court.") Thus the majority conjures the term "ministerial" (a term nowhere present in the statute) as an antonym to discretionary, and then finds all Blake's acts to be ministerial in nature.[1] According to the opaque portion of the Restatement commentary adopted by the majority, ministerial acts are those where "the matter for which judgment is required has little bearing of importance upon the validity of the act...." However, while holding that Blake's acts satisfied this definition, the majority fails to explain how the matter for

---

**1.** I find the proposed dichotomy of the concurrence, *i.e.,* between policy-making and operational acts, to the extent that it is more than unhelpful semantics, to be contradictory to legislative intent. *Fiat Motors,* 498 A.2d at 1067. The preamble to the County and Municipal Tort Claims Act, as set out in full in an appendix to *Fiat Motors,* makes clear the legislative intent to protect local governmental services and to extend immunity beyond merely those activities for which insurance is unavailable. *Cf. City of Wilmington v. Spencer,* Del.Supr., 391 A.2d 199 (1978) (opinion issued less than one year before legislature expressly enacted Tort Claims Act to reverse recent court decisions). I would therefore not overrule *Sadler.*

which judgment was required of the rescue workers in *Sadler, i.e.,* how to transport Sadler, had any greater bearing of importance upon the validity of their acts. Moreover, I find the Restatement definition to have it exactly backwards. The essence of discretion is choice, and the right to be wrong; that is, where the authority to act, and the validity of the act, are independent of the correctness of the chosen manner of execution of the act. Common sense would therefore indicate that it is *discretionary* acts for which an actor's authority to choose is not dependent upon the particular option he selects.

I find a later sentence in the Restatement to be more enlightening: "Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with *little choice* as to when, where, how or under what circumstances their acts are to be done." Restatement (Second) of Torts, § 895D, comment · h. (emphasis added). The undisputed record establishes that Blake was directed only to safely transport Morris to his destination; the manner and method of performing this task, in particular, the securing of Morris, was left entirely to Blake's discretion. Even were one to concede that Blake's decision regarding how to equip his vehicle for the transportation of patients such as Morris was somehow not discretionary (despite the fact that the County had no guidelines limiting Blake's discretion in this regard), surely Blake's fatal decision to rehandcuff Morris in the front was discretionary. Acting within his authority, Blake granted Morris' request to be handcuffed with his hands in front, and not behind his back, so that Morris could smoke a cigarette. Blake's undisputed testimony was that it was his experience that allowing those passengers to smoke who so requested tended to calm them down. Is this not precisely the kind of act which, no matter how negligent, we would commonly call "discretionary"? Absent this decision by Blake, Morris would *not* have been able to injure himself. With

no particularized findings by the jury as to which of Blake's acts negligently caused Morris' injuries, a holding that any allegedly negligent act was discretionary and therefore immune must result in reversal.

Thus, despite the fact that Blake's negligent actions occurred in the performance of duties undeniably left to his discretion, the majority holds that the matters over which Blake exercised his discretion required so little in the way of judgment as to be classified as "ministerial" and therefore not "discretionary."[2] I would hold that Blake's acts in selecting both the manner and method of transporting and securing Morris were inseparable and discretionary, and therefore subject to immunity under the County and Municipal Tort Claims statute, 10 *Del.C.* § 4010, et seq. *Sadler v. New Castle County,* Del.Supr., 565 A.2d 917, 922 (1989). Therefore, I would reverse this "deep pocket" judgment. I respectfully dissent.

---

**2.** I find the majority's holding regarding the level of judgment entailed by Blake's acts to be particularly ironic in light of the fact that Mor-

ris had to resort to *expert testimony* to establish in hindsight that Blake's judgment was negligent.