E. Stanley MORRIS, Plaintiff,

v.

Frank BLAKE, Jr., and Sussex County, Delaware, a political subdivision of the State of Delaware, and the City of Milford, Delaware, a municipal corporation, Defendant.

Superior Court of Delaware,
Kent County.

Submitted: May 6, 1988.
Decided: July 1, 1988.

I. Barry Guerke, and John C. Andrade, of Parkowski, Noble & Guerke, P.A., Dover, for plaintiff.

John C. Phillips, and R. Stokes Nolte, of Phillips & Snyder, Wilmington, for defendant Blake.

B. Wilson Redfearn, and Nancy E. Chrissinger, of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendants Sussex County and the City of Milford.

## MEMORANDUM OPINION

RIDGELY, Judge.

This is a personal injury action arising from an incident involving the transportation of plaintiff, E. Stanley Morris, from Milford Memorial Hospital to the Delaware State Hospital by defendant Frank Blake, Jr. ("Blake"), a Sussex County Constable. It is alleged that, while enroute, plaintiff suffered serious and permanent injuries when he jumped or fell from Blake's car. The amended complaint alleges that the plaintiff's injuries were caused by Blake's negligent and/or willful and/or wanton conduct. Plaintiff further maintains that, at the time of his injury, Blake was acting within the scope of his employment as an agent or employee of Sussex County and/or the City of Milford.[1] Both Sussex County and the City of Milford have denied agency by affidavits. The amended complaint also alleges negligence on the part of Sussex County and/or the City of Milford for failure to provide Blake training as a constable, personnel, and proper equipment to transport patients, such as a vehicle equipped with rear doors that are unable to be opened from the inside. Lastly, the plaintiff contends the Tort Claims Act violates the remedy-for-injury clause of Article I, Section 9 of the Delaware Constitution.

Blake has moved for summary judgment upon the ground that, as a constable in performance of his duties, he can only be held liable if the harm to plaintiff was intentional or if his behavior constituted "willful or wanton misconduct." 16 *Del.C.* § 5122(f). Blake further asserts that the facts, when viewed in a light most favorable to the plaintiff, fail to create an inference of such misconduct.

Sussex County and the City of Milford have moved for summary judgment upon the grounds that Blake was neither their agent nor their employee. Alternatively, the County and the City maintain that plaintiff's claim against them is barred by the County and Municipal Tort Claims Act, 10 *Del.C.* §§ 4010 through 4013.

## I. FACTS

On summary judgment, the material facts must be viewed in the light most favorable to the nonmoving party, and the movant must demonstrate by uncontested facts that he or it is entitled to judgment as a matter of law. *Vanaman v. Milford Memorial Hospital*, Del.Supr., 272 A.2d 718 (1970).

On July 1, 1973, Sussex County adopted requirements for employment of constables that included bonding, criminal and reference checks, training, and an oath of office. The system included a procedure for approval by Sussex County Council before a constable could receive remuneration for his services. The Sussex County Administrator was designated as the Chief Constable with two functions: (1) to be responsible for the background checks of the ap-

---

1. For the purposes of this opinion, the master-servant and principal-agent relationships will be used interchangeably as generally there is no basic or fundamental distinction between the liability of a principal for the tort of the agent and the liability of the master for the liability of the servant. *See* 53 Am.Jur. 2d *Master and Servant* § 3, at 84 (1970); 2A C.J.S. *Agency* § 16, at 577–78 (1972).

plicants for the purpose of recommending for or against their commission as constables; and (2) to review monthly reports which the constables were required to make.

In 1978, Blake applied for the position of Sussex County Constable in order to transport patients to the Delaware State Hospital. In response to his application, the Chief Constable checked Blake's references and otherwise determined Blake's fitness to be a constable. Blake was also interviewed by two County councilmen.

Subsequently, the Sussex County Council approved Blake's appointment and bond, and he took his oath of office on February 27, 1979—with his employment as a constable being continued at the pleasure of the council. There was no written contract between Sussex County and Blake regarding either the job or the pay to be received. Initially, Blake was paid by the County for transporting patients. However, by the date of the plaintiff's injuries, Blake was being paid directly by the State of Delaware.

Blake distributed his business card, which identified him as a Sussex County Constable, to various hospitals so that they could call him to transport mental patients. He used his private vehicle, rather than a County vehicle, to provide this transportation. Although Blake was aware that many police vehicles have the rear-seat, inside-door handle removed or rendered inoperable, no one informed Blake that he should implement this precaution to prevent mental patients from exiting his vehicle while enroute.

On the afternoon of July 17, 1984, Blake received a call from Milford Memorial Hospital requesting that he transport plaintiff to the Delaware State Hospital for a 72–hour commitment. When he arrived at Milford Memorial Hospital, plaintiff was being held inside the complex with his hands handcuffed behind his back. Blake was informed that, while inside the hospital, the plaintiff had attempted to grab a gun from the holster of a policeman in an attempt to "shoot up things around the hospital." Blake did not review the plaintiff's commit-ment papers when they were given to him. After the plaintiff was put in Blake's car, a seatbelt was fastened around the plaintiff's waist, and shackles were placed on his legs. At the plaintiff's request, Blake forewent his normal practice of transporting the patient with his hands cuffed behind his back, and cuffed the patient in front so that he would be able to smoke.

When inside the car with the plaintiff, Blake rolled down his window because the plaintiff smelled of alcohol. Blake had transported the plaintiff for alcohol-related problems approximately two months earlier without incident. Accompanying Blake in the car was his father-in-law, who was seated in the front passenger seat, and his brother, who was seated in the right rear seat. The plaintiff was seated directly behind Blake, who was driving the car. Although the door next to the plaintiff was locked, it could be unlocked from the inside.

During the ensuing ride to Delaware State Hospital, the plaintiff stated that he wished to kill himself. After an exchange of conversation between the plaintiff and Blake during which Blake tried to console the plaintiff, the plaintiff smoked a cigarette and stated he was going to take a nap. He then put his head back as if to take a nap. At some point thereafter, the plaintiff unfastened his seatbelt, unlocked the door, and jumped out of the vehicle while it was in motion.

## II. DEFENDANT BLAKE'S MOTION FOR SUMMARY JUDGMENT

■ The procedure for involuntary commitment of an alleged dangerously mentally ill person for up to 72 hours is contained within 16 *Del.C.* § 5122. The statute provides that persons certified by a licensed medical doctor to be dangerously mentally ill "shall be transported by the peace officer to Delaware State Hospital." 16 *Del.C.* § 5122(c). Section 5122(a)(2) defines "peace officer" as "any public officer authorized by law to make arrests in a criminal case." Because 10 *Del.C.* § 2723 gives constables the power to make arrests in criminal cases, Blake was within the defini-

tion of "peace officer" in 16 *Del.C.* § 5122. Subsection (f) of section 5122 provides:

(f) No peace officer or medical doctor shall be subject to civil damages or criminal penalties for any harm resulting from the performance of his functions under this section unless such harm was intentional or the result of willful or wanton misconduct on his part.

In his motion for summary judgment, Blake contends that, pursuant to 16 *Del.C.* § 5122(f), he is immune from liability since the facts fall short of showing any inference of "intentional" or "willful or wanton" misconduct on his part.

The plaintiff opposes Blake's motion on two grounds. First, he argues that the immunity cited is inapplicable because Blake has failed to establish that he was performing his duties under section 5122. Alternatively, he argues that the facts, when viewed in a light most favorable to him, have created a jury question as to whether Blake's conduct was wanton.

Plaintiff asserts that the immunity provided to "peace officers" by subsection (f) is not available to Blake because Blake has failed to cite in the existing record documentation showing the existence of the complaint and the doctor's certificate.

This argument by the plaintiff is without merit because documentation of Blake's receipt of the commitment papers does exist in the record.

At page 38 of Blake's deposition, there is this testimony:

A. ... They gave me the papers....

Q. These are the commitment papers?

A. Yes, alcohol commitment.

And at page 41 of the same depositions:

Q. Now, before you got into your car, you got the commitment papers?

A. Uh-huh.

Q. Yes?

A. Yes.

Based on this uncontradicted testimony, I find sufficient evidence in the record that, at the time of the accident, Blake was performing his functions pursuant to section 5122. To prevail against Blake, plaintiff must overcome the immunity of section 5122(f).

The second issue on this motion concerns whether, when the facts are viewed in a light most favorable to the plaintiff, Blake's alleged misconduct created any inference of being "wanton" in nature.[2]

Generally, the issue of whether wanton conduct exists is to be determined by the facts and circumstances of each particular case; there is no fixed rule in determination of this issue. *Creed v. Hartley*, Del. Super., 199 A.2d 113 (1962), *aff'd*, Del.Supr., 196 A.2d 224 (1963), *citing Biddle v. Boyd*, Del.Super., 199 A. 479 (1938). Although the question of whether conduct is wanton is usually to be determined by the jury, there are instances where the issue of wantonness should not be submitted to the jury. *Knoll v. Wright*, Del.Super., C.A. No. 85C-AU-31, Babiarz, J., (Dec. 22, 1987), *citing Jardel Co., Inc. v. Hughes*, Del. Supr., 523 A.2d 518 (1987).[3]

■ To constitute wanton conduct, the behavior must go beyond inadvertence, momentary thoughtlessness, or mere negligence. *Treco v. Bosick*, Del.Super., 199 A.2d 752 (1964). More importantly, wanton conduct requires behavior which is more egregious than conduct constituting gross negligence. *Carlisle v. White*, 545 F.Supp. 463 (D.Del.1982); *Jardel Co., Inc. v. Hughes, supra; McHugh v. Brown, supra; Hazewski v. Jackson*, Del.Super., 266 A.2d 885 (1970). In the case of *Wagoner v. Shanks*, Del.Supr., 194 A.2d 701 (1963), this definition of "wanton" was given:

**2.** In his brief, plaintiff does not contend that Blake's conduct in this matter was either intentional or willful.

**3.** For cases in which, as a matter of law, the conduct was held not to be wanton, *see Carlisle v. White*, 545 F.Supp. 463 (D.Del.1982); *Foster v. Shropshire*, Del.Supr., 375 A.2d 458 (1977); *McHugh v. Brown*, Del.Supr., 125 A.2d 583 (1956); *Law v. Gallegher*, Del.Supr., 197 A. 479 (1938); *Schorah v. Carey*, Del.Super., 318 A.2d 610 (1974), *rev'd on other grounds*, Del.Supr., 331 A.2d 383 (1975); *Hazewski v. Jackson*, Del. Super., 266 A.2d 885 (1970); *Treco v. Bosick*, Del.Super., 199 A.2d 752 (1964); *Biddle v. Boyd*, Del.Super., 199 A. 479 (1938).

Wantonness does not necessarily imply any form of intent to cause harm which results from some activity. Wanton conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he knows or should know that there is an eminent likelihood of harm which can result. It is the "I don't care attitude" discussed by this Court in *McHugh v. Brown.*

*Id.* at 707 (citation omitted). This definition of wanton—a conscious indifference evidencing an "I-don't-care attitude"—has been applied repeatedly in Delaware jurisprudence.[4] The "foolhardy, 'I-don't-care-a-bit-what-happens' attitude" was further refined in *Creed v. Hartley, supra,* where it was held that wanton behavior exists not because of the existence of one factor alone —such as the failure to pay attention to a warning—but consists of "the sum total of different factors, manifest(ing) a high degree of indifference, with the realization of the possibility of injury to others and the utter disregard of the probable consequences."

Recently, in *Jardel Co., Inc. v. Hughes, supra* at 530, the Court, after equating the terms "reckless" and "wanton," held that the "crucial element" in defining recklessness involves the defendant's state of mind and the issue of foreseeability. The Court stated:

Where the claim of recklessness is based on an error of judgment, a form of passive negligence, the plaintiff's burden is substantial. It must be shown that the precise harm which effectuated must be reasonably apparent but consciously ignored in the formulation of the judgment.

*Id.* at 531.[5]

■ The combination of factors plaintiff points to in asserting wanton conduct by Blake include: Blake failed to read the plaintiff's commitment papers; despite his knowledge that the plaintiff was intoxicated and had attempted to grab a gun from a police officer, Blake forewent his normal practice of cuffing the patient with his hands behind his back; Blake knew his car was not suitable for transporting patients; and that after the plaintiff stated his intent to commit suicide, Blake failed to take proper precautions.

The Court is not persuaded that the facts permit reasonable persons to draw but one inference adverse to plaintiff. Summary judgment on this issue must, therefore, be denied. *Eustice v. Ruppert,* Del.Supr., 460 A.2d 507, 509 (1983).

## III. DEFENDANT CITY OF MILFORD'S MOTION FOR SUMMARY JUDGMENT

The Court's attention has not been directed to any fact which would support plaintiff's allegation that Blake was an agent or employee of the City of Milford. The City has submitted an affidavit of non-agency in support of its motion; this affidavit has not

4. *Carlisle v. White,* 545 F.Supp. 463 (D.Del. 1982); *Dixon v. Switzenberg,* 262 F.Supp. 535 (D.Del.1967); *Jardel Co., Inc. v. Hughes,* Del. Supr., 523 A.2d 518 (1987); *Cloroben Chemical Corp. v. Comegys,* Del.Supr., 464 A.2d 887 (1983); *Yankanwich v. Wharton,* Del.Supr., 460 A.2d 1326 (1983); *Foster v. Shropshire,* Del. Supr., 375 A.2d 458 (1977); *Wilson v. Tweed,* Del.Supr., 209 A.2d 899 (1965); *Knoll v. Wright,* Del.Super., C.A. No. 85C–AU–31, Babiarz, J. (Dec. 22, 1987); *Green v. Millsboro Fire Department,* Del.Super., 385 A.2d 1135 (1978), *aff'd in part, rev'd in part,* Del.Supr., 403 A.2d 286 (1979); *Schorah v. Carey,* Del.Super., 318 A.2d 610 (1974), *rev'd on other grounds,* Del.Supr., 331 A.2d 383 (1975); *Hazewski v. Jackson,* Del. Super., 266 A.2d 885, 886 (1970); *Aastad v. Riegel,* Del.Super., 262 A.2d 652, *modified,* Del. Supr., 272 A.2d 715 (1970); *Treco v. Bosick,* Del.Super., 199 A.2d 752 (1964); *Creed v. Hart-*

ley, Del.Super., 199 A.2d 113 (1962), *aff'd,* Del. Supr., 196 A.2d 224 (1963).

5. The majority of caselaw cited for the definition of "wanton" comes from cases dealing with the now-repealed automobile guest-liability statue, 21 *Del.C.* § 6101, which read "willful or wanton *disregard."* Here, 16 *Del.C.* § 5122(f) reads "willful or wanton *misconduct."* This Court recently held "willful or wanton misconduct" occurs when one is conscious of his conduct and recklessly indifferent to its consequences. *See Thompson v. Unemployment Insurance Appeal Board,* Del.Super., C.A. No. 86A–AU–2, Ridgely, J. (May 15, 1987) [available on WESTLAW, 1987 WL 11462]. Thus, "wanton disregard" and "wanton misconduct" share equivalent definitions.

been controverted. Accordingly, summary judgment in favor of the City of Milford is granted. *See Moore v. Sizemore,* Del. Supr., 405 A.2d 679 (1979); *Nix v. Sawyer,* Del.Super., 466 A.2d 407 (1983).

### IV(a). MERITS OF DEFENDANT SUSSEX COUNTY'S MOTION FOR SUMMARY JUDGMENT

■ Before addressing the merits of Sussex County's motion, I note that, since Sussex County's motion was briefed prior to the filing of Blake's motion, the briefing on Sussex County's motion does not discuss the effect of any immunity available to Blake under 16 *Del.C.* § 5122(f). The effect of immunity to an agent/employee on the liability of the employer/principal was set forth in *Fields v. Synthetic Ropes, Inc.,* Del.Supr., 215 A.2d 427 (1965), *on remand,* Del.Super., 219 A.2d 374 (1966). There, it was held that suit may be brought against the employer based on the tort of his employee, even though the employee himself may have immunity from such a suit. *Id.* at 432–33. Therefore, Sussex County, unless otherwise immune, may be liable even if Blake has immunity under 16 *Del.C.* § 5122(f).

■ The first issue raised in Sussex County's ("County") motion is lack of agency. No single rule determines whether a given relationship is that of an employee or an independent contractor. *White v. Gulf Oil Corp.,* Del.Supr., 406 A.2d 48, 51 (1979). Ordinarily, agency is a question of fact in each case, with the central inquiry being whether the right to control is present, without regard to whether such control is actually exercised or not. *Lester C. Newton Trucking Co. v. Neal,* Del. Supr., 204 A.2d 393 (1964); *Gooden v. Mitchell,* Del.Super., 21 A.2d 197 (1941). Plaintiff points to various facts to demonstrate the County's right to control Constable Blake. The County response is that it served as a licensing authority and that it neither exercised nor had the right to exercise control over the conduct of constables in performance of their particular tasks. Summary judgment will be denied where the agency question is critical to the disposition of the case and where further exploration of the facts is appropriate. *Schagrin v. Wilmington Medical Center, Inc.,* Del.Super., 304 A.2d 61 (1973). Because this maxim applies here, Sussex County's motion for summary judgment based upon lack of agency is denied.

■ Sussex County next contends that the plaintiff's claim against it is barred under the Torts Claim Act, notwithstanding plaintiff's reliance upon 10 *Del.C.* § 4012(1), which states:

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury, or death in the following circumstances:

(1) In its ownership, maintenance, or use of any motor vehicle....

Sussex County relies upon 10 *Del.C.* § 4011(b)(3), which provides:

(b) Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from....

(3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order resolution, regulation, or resolved under which the discretionary function or duty is performed is valid or invalid.

Plaintiff maintains that Sussex County's contention that the County has immunity for its discretionary functions is controlled by the rationale of *Rainey v. Wilmington Parking Authority,* Del.Super., 488 A.2d 906 (1984). In *Rainey,* a patron of the Authority who was assaulted and robbed brought an action alleging that his injuries were the result of insufficient security. The Authority moved to dismiss based on the "discretionary function" immunity of section 4011(b)(3). The Court denied the motion after deciding that, while the question of whether to provide a public building with a certain type of security involves discretion, the governmental entity does not have immunity-protected discretion to provide an unsafe building.

In this case, I conclude that discretion is involved in the County's alleged failures to provide Blake with training, additional personnel, and a County vehicle. These claims, set forth within paragraph 10 of the Amended Complaint, are barred by section 4011(b)(3). *Compare Holman v. Walls,* 648 F.Supp. 947 (D.Del.1986).

The above conclusion does not end the inquiry, however, because the issue of Blake's agency remains unresolved. If Blake's agency is proven, his choice of vehicle may have been Sussex County's choice. If Sussex County undertook through its agent to provide a vehicle for the transportation of mental patients, the duty of reasonable care to provide a safe vehicle for that purpose is not subject to governmental immunity as a discretionary function. *Compare Rainey v. Wilmington Parking Authority, supra.* Because further inquiry into the agency issue is necessary, summary judgment on the issues raised by Blake's selection of a vehicle is denied.

### IV(b). CONSTITUTIONALTY OF TORT CLAIMS ACT

 Last, plaintiff argues that the Tort Claims Act ("Act") violates the remedy-for-injury clause of Article I, Section 9 of the Delaware Constitution. Because a part of plaintiff's claim is barred by the Act, this claim must be addressed. *Cf. Porter v. Delmarva Power & Light Co.,* Del.Super., 488 A.2d 899 (1984), *app. den.,* Del.Supr., 522 A.2d 347 (1987).

The doctrine of sovereign immunity is established in the Delaware Constitution. I *Del. Const. Ann.* § 9; *Doe v. Cates,* Del.Supr., 499 A.2d 1175 (1985); *Donovan v. Delaware Water Resources Commission,* Del.Supr., 358 A.2d 717 (1976); *Shellhorn & Hill, Inc. v. State,* Del.Supr., 187 A.2d 71 (1962). Counties are entitled to sovereign immunity as divisions of the state. *Wilmington Housing Authority v. Williamson,* Del.Super., 228 A.2d 782 (1967); *Shellhorn & Hill, Inc. v. State, supra.* Only an act of the General Assembly may waive sovereign immunity. *Fiat Motors v. Mayor and Council,* Del.Supr., 498 A.2d 1062, 1064 (1985).

Article I, Section 9, by its own terms, limits any remedy for injury attributable to the State. This section is not a waiver of sovereign immunity; it is a prescription of the method of waiving or limiting the defense of sovereign immunity. *Shellhorn & Hill, Inc. v. State, supra.* The County and Municipal Tort Claims Act, 10 *Del.C.* §§ 4010 through 4013, does not abolish any common law right of action against the County because no such right existed at common law. I hold that the County and Municipal Tort Claims Act does not violate Article I, Section 9 of the Delaware Constitution.

Accordingly, defendant Sussex County's motion for summary judgment is partially GRANTED as to the allegations within paragraph 10 of the Amended Complaint and, in all other respects, it is DENIED.