**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| MORGAN MCCAFFREY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: N12C-01-138 EMD |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WILMINGTON, PATROLMAN | ) | JURY OF TWELVE DEMANDED |
| MICHAEL SPENCER, individually and in | ) | |
| his capacity as an officer, WILMINGTON | ) | |
| SERGEANT DONALD BLUESTEIN, | ) | |
| individually and in his capacity as an | ) | |
| officer, SERGEANT GERALD MURRAY, | ) | |
| individually and in his capacity as an | ) | |
| officer, CORPORAL RALPH SCHIFANO, | ) | |
| individually and in his capacity as an | ) | |
| officer, MASTER SERGEANT SHERRI | ) | |
| TULL, individually and in her capacity as | ) | |
| an officer, and CHIEF MICHAEL J. | ) | |
| SZCZERBA, individually and in his | ) | |
| capacity as an officer, | ) | |
| | | |
| Defendants. | | |

Submitted: July 22, 2014
Decided: November 3, 2014

Defendants' City of Wilmington and Chief Michael Szczerba's Motion to Dismiss or, in the Alternative, for Summary Judgment on Count IV(b) of the Second Amended Complaint

***GRANTED***

Laura J. Simon, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, *Attorney for Plaintiff Morgan McCaffrey.*

Daniel F. McAllister, Esquire, City of Wilmington Law Department, Wilmington, Delaware, *Attorney for Defendants City of Wilmington and Michael J. Szczerba.*

**DAVIS, J.**

## INTRODUCTION AND PROCEDURAL HISTORY

This is a personal injury action brought by Plaintiff Morgan McCaffrey. Ms. McCaffrey seeks damages against Defendants City of Wilmington (the "City"), Officer Michael Spencer,[1] Sergeant Donald Bluestein, Sergeant Gerald Murray, Corporal Ralph Schifano, Master Sergeant Sherri Tull, and Chief Michael Szczerba arising from events surrounding a June 5, 2010 traffic accident. Ms. McCaffrey makes claims of negligence and recklessness.

On June 26, 2013, after briefing and a hearing, the Court granted in part and denied in part a motion for summary judgment filed by Defendants Sergeant Bluestein, Sergeant Murray, Corporal Schifano, Master Sergeant Tull, Chief Szczerba and the City (the "Decision"). Through the Decision, the Court entered judgment in favor of the City, Sergeant Bluestein, Sergeant Murray, Corporal Schifano, Master Sergeant Tull, and Chief Szczerba on all claims asserted against these parties in Counts II, III and IV of the Second Amended Complaint.

On July 3, 2013, Ms. McCaffrey filed a motion for reargument contending that (1) the defendants did not seek to dismiss, and the Court did not rule upon Ms. McCaffrey's state tort gross negligence and reckless retention and supervision claims; (2) the Court overlooked controlling precedent and misapprehended the facts on the Section 1983 claims against the defendants, as relating to the gross negligent and reckless retention and supervision claims as well as the failure to appropriately discipline officers with alcohol-related misconduct; and (3) that the Court misapprehended the law and facts regarding Ms. McCaffrey's equal protection claim against Sergeant Bluestein, Sergeant Murray, Corporal Schifano, and Master Sergeant Tull. This Court granted reargument on the first point. After reargument, the Court allowed Ms. McCaffrey to go forward against Chief Szczerba and the City on Ms. McCaffrey's state tort

---

[1] Subsequent to the filing of this suit Patrolman Michael Spencer was promoted and will be referred to as Officer Spencer throughout this opinion.

gross negligence and reckless retention and supervision claims. This Court also allowed the City and Chief Szczerba the opportunity to move for summary judgment only on Ms. McCaffrey's state tort gross negligence and reckless retention and supervision claims. For clarity purposes, the Court designated this claim as Count IV(b).

Subsequently the City and Chief Szczerba filed Defendants' City of Wilmington and Chief Michael Szczerba's Motion to Dismiss or in the Alternative, for Summary Judgment on Count IV(b) of the Second Amended Complaint ("the Motion"). For the reasons set forth in this opinion, the Motion is **GRANTED**.

## FACTUAL BACKGROUND

This matter arises from a motor vehicle accident, between Ms. McCaffrey and Officer Spencer, which occurred at around 2:00 a.m. on June 5, 2010, at the intersection of 2nd and Orange Streets in Wilmington, Delaware.

At the time of the accident Officer Spencer had been a member of the Wilmington Police Department ("WPD") for approximately two and a half years. Officer Spencer submitted his application for employment with the WPD on May 22, 2007.[2] In the application he disclosed that on July 10, 2004, he had a motor vehicle violation for disregarding a red light, and that on March 9, 2007, he committed a motor vehicle violation for speeding.[3] While certain minimum qualifications are required to join the WPD, no rules or policies require the hiring of a specific officer.[4] Nor do policies or regulations dictate when new officers are hired, or how many are hired.[5] The WPD has discretion with respect to this function.[6] Chief Szczerba approved all new hires.

---

[2] WPD Application, Defendants' Brief in support of their Motion for Summary Judgment, Appendix, A-266-269.
[3] *Id*. at A-278.
[4] Defendants' Reply in Support of their Motion, pg. 8.
[5] *Id*.

3

Officer Spencer began his employment with the WPD in January 2008 as a "Probationary Patrol Officer." Like all new officers he had to complete an eighteen-month probationary period to demonstrate his "fitness for continued employment" before he was officially hired as a Patrol Officer.[7] During this probationary period Officer Spencer was reprimanded and punished for two alcohol-related incidents. On September 13, 2008, Officer Spencer did not show up for work, and he later testified that he did not go to work because he had been out late, drinking the night before.[8] Around November 2008, Officer Spencer admitted to drinking and driving with his gun.[9] Despite these infractions, the WPD determined that Officer Spencer successfully completed his probationary period in June 2009.

Subsequent to the completion of the probationary period, on April 4, 2010, Officer Spencer was disciplined for failing to contact his direct supervisor after being involved in a motor vehicle accident after drinking alcohol.[10]

Two months after that incident, at around 2:00 a.m. on June 5, 2010, at the intersection of 2nd and Orange Streets in Wilmington, Delaware, Officer Spencer drove through a red light and struck Ms. McCaffrey's vehicle on the rear passenger side, pushing it into a fire hydrant. Prior to the accident, Officer Spencer had been drinking at a "Beef n Brew" at Catherine Rooney's pub.

Officer Spencer called 911 to report the accident. Ms. McCaffrey heard him speaking in police terms. Shortly after that, Officer Spencer showed Ms. McCaffrey his identification card and explained to her that he was a police officer. After waiting some time for the police to arrive in response to Officer Spencer's call, Officer Spencer asked Ms. McCaffrey whether she would

---

[6] *Id.*

[7] Plaintiff's Opposition to the Motion, pg. 3.

[8] Plaintiff's Exhibit A of the Motion, OPS transcript dated June 10, 2010.

[9] Plaintiff's Exhibit B of the Motion, OPS investigation dated October 21, 2008.

[10] Plaintiff's Exhibit C of the Motion, Deposition of Captain Victor Ayala at 11.

4

like to handle the matter civilly. Ms. McCaffrey agreed.  Officer Spencer called the police back and said to disregard his prior call.  Officer Spencer told Ms. McCaffrey he had been drinking.

At the scene of the accident, Officer Spencer placed his hands on Ms. McCaffrey's back and kissed her on the lips. Ms. McCaffrey backed away from him. Officer Spencer asked Ms. McCaffrey where she lived, and she responded that she lived close by.  Officer Spencer advised that they should move their vehicles there to get them off the roadway.

Upon parking the vehicles near Ms. McCaffrey's home, Officer Spencer removed items from his glove box, including his gun, magazine and badge. Officer Spencer asked Ms. McCaffrey to hold them for him.  Officer Spencer then asked to go into Ms. McCaffrey's apartment to talk about the accident.  Ms. McCaffrey agreed to his request.

After entering Ms. McCaffrey's apartment, Ms. McCaffrey went into her bathroom. When she came out, Officer Spencer was in basketball shorts.  Officer Spencer patted the bed in an invitation for Ms. McCaffrey to sit down next to him. When Ms. McCaffrey did, Officer Spencer asked whether she wanted to have sex.  Ms. McCaffrey stated that she did not.  After her response, Officer Spencer straddled Ms. McCaffrey and asked again whether she wanted to have sex. Ms. McCaffrey again refused.  Ms. McCaffrey rose and returned to the bathroom for five to seven minutes.  When she exited the bathroom, Officer Spencer was asleep in Ms. McCaffrey's bed. Ms. McCaffrey then left her apartment, and went to a friend's home where she called the WPD at 3:52 a.m.

Sergeant Bluestein, Sergeant Murray, Corporal Schifano, and Master Sergeant Tull responded to Ms. McCaffrey's call and reported promptly to her apartment. Ms. McCaffrey gave the responding officers Officer Spencer's gun and other items.

In response to Ms. McCaffrey's report that Officer Spencer was drunk, one officer told Ms. McCaffrey "He's harmless; he's drunk." The officers questioned Ms. McCaffrey in a way that indicated that the officers were unsympathetic to Ms. McCaffrey's concerns and fears. It also appears that the officers did not believe Ms. McCaffrey's version of events because she was female and Officer Spencer was male and a WPD officer. The officers woke Officer Spencer up to remove him from Ms. McCaffrey's apartment. As the "investigation" proceeded, Master Sergeant Tull called Captain Dietz three times because she wanted to administer DUI testing. Captain Dietz told her no all three times, at 4:29 a.m., 5:04 a.m., and 5:26 a.m.

Officer Spencer was taken to Wilmington Hospital at 5:00 a.m. He was cleared for injuries and released at 5:39 a.m.

At 7:15 a.m., Corporal Schifano questioned Officer Spencer about the incident. Officer Spencer refused to cooperate but eventually agreed to perform field tests and passed all of the tests, although he had no memory of performing them due to his intoxication.

## PARTIES' CONTENTIONS

In the Motion, the City raises three arguments for dismissal or in the alternative summary judgment. First, the City argues that Ms. McCaffrey cannot show that her automobile accident involving Officer Spencer gave rise to liability on the part of the City or Chief Szczerba because Officer Spencer was driving his personal vehicle and was not going to or coming from work. The City, therefore, contends that the City could not have exercised control over Officer Spencer, that neither the City nor Chief Szczerba was aware of any reasonable opportunity to do so, and, as such, were not the proximate cause of any injuries allegedly suffered by Ms. McCaffrey.

6

Second, the City argues that the City is immune from Ms. McCaffrey's claims of grossly negligent and reckless hiring, supervision and retention under the County and Municipal Tort Claims Act. ("the Act").[11]

Third, the City contends that the claim against Chief Szczerba must be dismissed because Ms. McCaffrey cannot show that Chief Szczerba acted with gross negligence or recklessness in hiring, retaining or supervising Officer Spencer, or that the hiring, retention or supervision of Officer Spencer resulted in property damage or bodily harm.

In response to the City's first argument, Ms. McCaffrey contends that she can show that her injuries from Officer Spencer gave rise to liability on the part of the City and Chief Szczerba, because the City and Chief Szczerba had notice of troubling incidents with Officer Spencer.

Ms. McCaffrey next argues that the City is not immune under the Act from the claims of negligent and grossly negligent and reckless hiring, supervision and retention, because these acts were not discretionary, and because Officer Spencer used the chattel given to him by the City during the incident. [12]

Finally, Ms. McCaffrey claims that Chief Szczerba acted with gross negligence and recklessness that resulted in property damage and bodily harm to Ms. McCaffrey.

The Court holds that the Act applies to the actions of the City and Chief Szczerba. The Court further concludes that, under the Act, the City and Chief Szczerba are immune from Ms. McCaffrey's claims of gross negligence and recklessness in the hiring, supervision and retention of Officer Spencer. Because the Court holds that the Act applies, the Court does not address the other contentions made by the parties.

---

[11] 10 *Del. C.* § 4010-13.
[12] The chattel mentioned by Ms. McCaffrey is Officer Spencer's gun, badge and ammunition.

7

## STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled.  The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[13] Summary judgment will be granted if, after viewing the record in a light most favorable to a non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[14]  If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[15]  The moving party bears the initial burden of demonstrating that the undisputed facts support the claims or defenses.[16]  If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.[17]

## DISCUSSION

### A.  Applicable Statutes

Sections 4011 and 4012 of title 10 of the Delaware Code apply in this situation.  Section 4011, in relevant part, provides:

> (a)  Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery from damages.  That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

---

[13] *Merrill v. Crothall-American Inc.,* 606 A.2d 96, 99-100 (Del .1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* 312 A.2d 322, 325 (Del. Super. Ct.1973).

[14] *Id.*

[15] *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962); *See also Cook v. City of Harrington,* 1990 WL 35244, I.D. No. 89C-FE-21 at *3 (Del. Super. Ct., Feb. 22, 1990) (citing *Ebersole,* 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates ... that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[16] *Moore v. Sizemore,* 405 A.2d 679, 680 (Del.1979) (citing *Ebersole,* 180 A.2d at 470).

[17] *See Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).

(b)  Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from:

\* \* \*

(3)  The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under the discretionary function or duty is performed is valid or invalid.

\* \* \*

(c)  An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

At the hearing on the Motion, the parties made arguments with respect to whether Section 4012 applies.  Section 4012 provides, in relevant part, as follows:

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

\* \* \*

(1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

The Court finds, and the parties do not seem to dispute, that the City is a governmental entity for purposes of the Act.  Moreover, the facts of this case demonstrate that Chief Szczerba is an employee of the City and that Chief Szczerba was acting within the scope of his employment when he purportedly acted or failed to act in a manner that would make him liable to Ms. McCaffrey for her purported physical injuries.  The two questions that need to be answered, therefore, are: (1) were the complained of acts discretionary and, if discretionary, (2) did Chief Szczerba perform his purported acts or omissions in a manner that is wantonly negligent or with willful and malicious intent.

9

**B. The actions of the City, and Chief Szczerba, are immune under the Act because those actions are discretionary.**

This Court will first address the City's immunity argument. The City is seeking immunity under Section 4011 of the Act,[18] which reads that "[e]xcept as otherwise expressly provided by statute all governmental entities and their employees shall be immune from suit on any and all tort claims."[19] While several exceptions to immunity are listed in Section 4012 of the Act, notwithstanding those exceptions an entity shall not be liable for any damage claim which results from "[t]he performance or failure to perform a discretionary function or duty."[20] Whether a duty is ministerial or discretionary is normally a question of law.[21]

The City contends that the decisions related to the hiring, retention and supervision of Officer Spencer were discretionary. Accordingly, the City contends this makes the City immune from any liability arising out of the hiring, retention or supervision of Officer Spencer.

The Delaware Supreme Court has held that the "immunity granted to discretionary acts does not extend to every circumstance in which some element of choice is involved."[22] For example, in *Sussex County v. Morris*,[23] the Supreme Court of Delaware examined the scope of immunity conferred upon a county official under the Act. The appellee sustained injuries when a Sussex County constable conveyed the appellee to the Delaware State Hospital in the constable's own automobile.[24] The appellee filed suit against Sussex County.[25] Sussex County asserted that

---

[18] 10 *Del. C.* § 4010-13.
[19] 10 *Del. C.* § 4011(a).
[20] 10 *Del. C.* § 4011(b)(3); *See Heaney v. New Castle County*, 672 A.2d 11, 14 (Del. 1995).
[21] *See, e.g., Simms v. Christina School Dist.*, C.A. No. 02C-07-043, 2004 WL 344015, *8 (Del. Super. Jan. 30, 2004).
[22] *Sussex County v. Morris*, 610 A.2d 1354, 1359 (Del. 1992).
[23] *Id.* at 1354.
[24] *Id.* at 1355.

it was immune from any liability for the appellee's injuries under the Act, because the constable's actions were discretionary.[26] According to Sussex, the constable made a number of discretionary decisions in transporting the appellee that caused the appellee's injuries.[27] For example, the constable chose to handcuff the appellee in the front as opposed to the back and used a car with back doors that could be unlocked and opened from the inside.[28]

The Court disagreed with Sussex County, and used the term "ministerial" to describe those acts which may involve an insignificant element of choice, but which the legislature has not insulated from immunity under the Act.[29] The Court considered the actions of the constable ministerial in nature.[30]

The Court adopted the definition of "ministerial" from the Restatement (Second) of Torts which states that an act is ministerial "if the act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act."[31] The distinction between discretionary and ministerial acts "is always one of degree. Ministerial acts are those done by officers and employees who are

---

[25] *Id*. at 1356.
[26] *Id.*
[27] *Id*.
[28] *Id*.
[29] *Id.*
[30] *Id.*
[31] Restatement (Second) of Torts § 895D, Comment h (1979). By contrast, the Restatement (Second) of Torts says the following about discretionary functions in Comment b: "The complex process of the administration of government requires that officers and employees be charged with the duty of making decisions, either of law or of fact, and of acting in accordance with their determinations. It has traditionally been explained by the courts that public officers and employees would be unduly hampered, deterred and intimidated in the discharge of their duties, and as a result undesirable shackles would be imposed upon agencies of government, if those who act improperly or even exceed the authority given them were not protected in some reasonable degree by being relieved from private liability. The basis of the immunity has been not so much a desire to protect an erring officer as it has been recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits. This, together with the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may now be acting largely on the basis of hindsight, has led to a general rule that tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function."

11

required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done. Examples of acts held to be ministerial under ordinary circumstances are the preparation of ballots, the registration of voters, the recording of documents and filing of papers, the care of prisoners, the driving of vehicles, the repair of highways, [and] the collection of taxes."[32] When the Court applied those principles it concluded that the constable's decision to use his personal car to transport the appellee, and to handcuff the appellee in the front were ministerial acts.[33] The constable was empowered by Sussex County to transport mentally ill patients.[34] The validity of the constable's authority was not at issue and is entirely distinct from any personal decision the constable made respecting his choice of motor vehicle.[35] The Court pointed out that the Restatement (Second) of Torts enumerates many acts that ordinarily are considered ministerial, such as the care of prisoners.[36]

This distinction between discretionary and ministerial acts was also elaborated on in *Sadler v. New Castle County*.[37] In *Sadler*, the appellant was injured when he accidentally fell over Brandywine Falls and struck his head on the rocks.[38] The accident victim sued New Castle County, claiming that his rescuers, who were all county employees, were negligent in selecting unduly hazardous means to remove him from the river, thus aggravating his injuries.[39] The Delaware Supreme Court affirmed the trial court's ruling that the rescuers' decision to carry Sadler across the river, rather than up a cliff, was purely a discretionary decision and, therefore, immune from liability under §4011(b)(3) of the Act.[40] The Court found that the rescuers'

---

[32] Restatement (Second) of Torts § 895D, Comment h.
[33] *Sussex County*, 610 A.2d at 1359.
[34] *Id*.
[35] *Id*.
[36] *Id*.
[37] *Sadler v. New Castle County*, 565 A.2d 917 (Del. Super. 1989).
[38] *Id*. at 919.
[39] *Id*. at 920.
[40] *Id*. at 919.

discretionary decisions on how to conduct the rescue were entirely distinct from the ministerial decision of which rescue equipment to use. In other words, it was the decision on how to conduct the rescue that caused the injuries, which led to New Castle County being immune.[41]

Likewise, in this case, the WPD selects when to hire new officers, and who to hire. There are no policies regarding this, except to lay out minimum qualifications. The WPD selects the means by which to supervise officers during a probationary period. The WPD also selects what discipline, if any, to subject an officer to after infractions. As stated above, ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done. Here, the record demonstrates that the WPD (i.e., the City) has a great deal of choice as to when, where, how or under what circumstances it acts to hire, retain and supervise the City's police officers. This "freedom" to act makes the decision to hire, retain and supervise the City's police officers a discretionary act and not a ministerial act. Therefore, the decisions to hire, retain, and supervise Officer Spencer were discretionary functions, and the City is immune from liability under the Act.[42]

**C. The purported acts or omissions of Chief Szczerba do not constitute wanton negligence or willful and malicious intent.[43]**

Section 4011(c) of the Act states that "[a]n employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful malicious

---

[41] *Sussex County*, 610 A.2d at 1359.

[42] *See, e.g., Tews v. Cape Henlopen School Dist.,* C.A. No. 12C-08158, 2013 WL 1087580, *3-5 (Del. Super. Feb. 14, 2014); *Simms*, 2004 WL 344015, *8.

[43] Ms. McCaffrey contends that she was injured during the incident with Officer Spencer; however, no proof of the injury was submitted to the Court. As was discussed at the hearing on the Motion, the Court, for the purpose of this analysis, will assume that Ms. McCaffrey has suffered some form of damage – body or property.

13

intent." Accordingly, the Act provides that Chief Szczerba could still be liable even in a situation where the Act would provide the City with immunity from suit. For Chief Szczerba to be liable, however, Chief Szczerba would have to be acting outside his scope of employment, or if he acted with wanton negligence or with willful malicious intent.

It is clear that any allegations against Chief Szczerba's hiring, retention and supervision of Officer Spencer are within Chief Szczerba's scope of employment. There are also no allegations and nothing in the factual record to suggest that Chief Szczerba acted with willful malicious intent. The only prong under which this matter could still be analyzed is wanton negligence.

The Court notes that Ms. McCaffrey does not plead wanton negligence in her complaint, but rather gross negligence. Wanton negligence is a higher standard than gross negligence,[44] and under an allegation of gross negligence, the claims against Chief Szczerba would clearly be dismissed. However, in the interest of judicial economy we will also address Court IV(b) as asserting a claim for wanton negligence.

Wanton negligence is a term of art, and although not defined in the statute, the issue of whether wanton negligence exists is to be determined by the facts and circumstances of each particular case.[45] Wanton negligence requires behavior which is more egregious than conduct constituting gross negligence.[46] Wantonness does not necessarily imply any intent to cause harm.[47] Rather, wanton conduct occurs when a person with no intent to cause harm, performs an act so unreasonable and dangerous that he knows or should know that there is an eminent

---

[44] *Morris v. Blake*, 552 A.2d 844, 847 (Del. Super. 1988).
[45] *Id*.
[46] *Id*.
[47] *Vannicola v. City of* Newark, No. 07c-03-040 JOH, 2010 WL 5825345 at * 9 (Del. Super., Dec. 21, 2010); *Morris*, 552 A.2d at 848.

14

likelihood of harm which can result.[48] It is demonstrated by a conscious indifference evidencing an "I-don't-care attitude."[49]

In *Morris v. Blake*, the plaintiff asserted that the defendant, a constable charged with transporting the plaintiff, engaged in wanton conduct through the following factors: the constable failed to read the commitment papers; the constable knew that the plaintiff was intoxicated but did not engage in his usual practice of cuffing the patient with his hand behind his back allowing the patient to open the door of the vehicle and jump out; the constable used his personal vehicle, which he knew was not suitable for transporting patients; the constable also failed to take precautions when the plaintiff advised him that he intended to commit suicide.[50] The constable moved for summary judgment. The Court denied the motion, stating that it was not persuaded that the facts permit reasonable persons to draw by one inference adverse to the plaintiff.[51]

In *Vannicola v. City of Newark*, the Court found that enough evidence existed that could lead a reasonable person to conclude that a police officer acted with wanton negligence.[52] At the time of the arrest, the officer was informed by the plaintiff that he had recently had surgery on his neck.[53] The officer observed sutures from the surgery on the plaintiff's neck.[54] Despite this information the officer handcuffed the plaintiff with his hands behind his back, although she knew that such a position placed pressure on the plaintiff's neck.[55] The officer also roughly pressed down on the plaintiff's neck, as she shoved him into the police vehicle.[56] As a result the

---

[48] *Morris,* 552 A.2d at 848.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Vannicola*, 2010 WL 5825345 at * 11.
[53] *Id.* at * 3.
[54] *Id.*
[55] *Id.*
[56] *Id.*

15

plaintiff's injury was aggravated and he required additional neck surgery.[57] Her apparent "I-don't-care attitude" toward the plaintiff's injury led the court to conclude that a jury could find wanton negligence on the officer's part, and the officer's motion for summary judgment was denied.[58]

In this case, Chief Szczerba was in charge of the day to day operations of the department. He approved all new hires and was informed when officers were disciplined for misconduct. It follows that Chief Szczerba was aware that Officer Spencer disclosed in his application that he had a motor vehicle violation for disregarding a red light, and a motor vehicle violation for speeding. Chief Szczerba would also have known that during the probationary period Officer Spencer was punished for two alcohol-related incidents, and admitted to drinking and driving with his gun. Despite being aware of these facts, Chief Szczerba allowed Officer Spencer to continue in his position as a patrolman.

The record also indicates that the WPD did take action with respect to Officer Spencer's conduct. On September 13, 2008, Officer Spencer did not show up for work, and he later testified that he did not go to work because he had been out late, drinking the night before.[59] Around November 2008, Officer Spencer admitted to drinking and driving with his gun.[60] The WPD reprimanded and punished Officer Spencer for these two alcohol-related incidents. Despite these infractions, however, the WPD, exercising its discretion, determined that Officer Spencer successfully completed his probationary period in June 2009. Subsequently to the completion of the probationary period, on April 4, 2010, Officer Spencer was involved in a motor vehicle accident after drinking alcohol and failed to contact his direct supervisor

---

[57] *Id.*
[58] *Id.* at *10.
[59] Plaintiff's Exhibit A of the Motion, OPS transcript dated June 10, 2010.
[60] Plaintiff's Exhibit B of the Motion, OPS investigation dated October 21, 2008.

afterwards with respect to this accident. Once again, the WPD disciplined Officer Spencer for the incident and failing to contact his direct supervisor.[61]

With these facts, an argument can perhaps be made that Chief Szczerba was negligent. However, on these facts it is clear that Chief Szczerba did not take an "I-don't-care attitude" toward potential conduct by Officer Spencer. The facts demonstrate that the WPD took steps to reprimand and otherwise discipline Officer Spencer. These steps were not enough to prevent Officer Spencer's subsequent conduct as to Ms. McCaffrey but these step help demonstrate that Chief Szczerba did not evidence conscious indifference evidencing an "I-don't-care attitude" as to Officer Spencer. Therefore, this Court finds that Chief Szczerba's decision to allow Officer Spencer to continue in his position does not rise to the level of wanton negligence as that term is used in connection with the Act.

## CONCLUSION

Based on the arguments above, drawing all reasonable inferences based on the facts alleged in Ms. McCaffrey's favor, the Defendants' City of Wilmington and Chief Michael Szczerba's Motion for Summary Judgment on Count IV(b) of the Second Amended Complaint is hereby **GRANTED**.

**IT IS SO ORDERED**.

/s/ *Eric M. Davis*
Eric M. Davis
Judge

---

[61] Plaintiff's Exhibit C of the Motion, Deposition of Captain Victor Ayala at 11.