# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAYNORD J. BRADLEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N16A-02-003 ALR |
| | ) | |
| RITE AID & UNEMPLOYMENT | ) | |
| INSURANCE APPEAL BOARD, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: October 13, 2016
Decided: January 3, 2017

## ORDER

*On Appeal from the Unemployment Insurance Appeal Board*
**REVERSED AND REMANDED**

1. Maynord Bradley ("Employee") worked for Rite Aid Pharmacy ("Employer") as a security officer for almost five years, from November 10, 2010 until he was discharged on September 23, 2015. The stated basis for Employee's discharge was that Employee brought a weapon to work.

2. Approximately one week before Employee was terminated, on or about September 15, 2015, one of Employer's regional managers visited the store location where Employee worked. The regional manager noticed that Employee was wearing a belt with a small pocketknife in the closed position attached to the belt. The pocketknife had a two-inch blade, and Employee had been wearing that

particular belt to work with the pocketknife attached for approximately one month before the regional manager visited the store. Employee had not been warned or instructed not to bring the pocketknife to work. The regional manager took steps to suspend Employee immediately, and Employee was terminated effective September 23.

3.     Employer's Code of Business Ethics & Conduct ("Policy") prohibits "bringing firearms, explosives, or weapons of any kind onto Company property or possessing the same while conducting business for the Company."[1]

4.     Upon being notified that he would be terminated, Employee filed a claim for unemployment benefits with the Division of Unemployment.

5.     By Decision dated October 12, 2015, a Claims Deputy found that Employee was terminated for just cause and disqualified from receiving benefits pursuant to 19 *Del. C.* § 3314(2).[2]

---

[1] R. at 9.

[2] 19 *Del. C.* § 3314 provides, in pertinent part:

> Disqualification for benefits. An individual shall be disqualified for benefits: . . . (2) For the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

2

6. On October 22, 2015, Employee filed an appeal from the Claims Deputy's decision to an Appeals Referee.

7. On November 5, 2015, the Appeals Referee held a *de novo* hearing regarding Employee's claim. By Decision dated November 5, 2015, the Appeals Referee affirmed the Claim Deputy's decision disqualifying Employee from benefits pursuant to § 3314(2).

8. On November 10, 2015, Employee filed an appeal from the Appeals Referee's decision to the Unemployment Insurance Appeal Board ("Board"). On January 13, 2016, the Board held a hearing regarding Employee's claim. By Decision dated February 2, 2016, the Board affirmed the Appeals Referee's decision disqualifying Employee from benefits pursuant to § 3314(2) ("Board Decision").

9. On February 12, 2016, Employee filed an appeal from the Board Decision to this Court. Employee claims that the Board erred by finding that Employee was terminated for just cause and disqualified from unemployment benefits pursuant to § 3314(2).

10. This Court reviews the Board Decision for an abuse of discretion.[3] Accordingly, this Court's review is limited to determining whether the Board's findings and conclusions are free from legal error and supported by substantial

---

[3] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).

3

evidence on the record.[4] Substantial evidence is relevant evidence that a reasonable person could accept as adequate to support a conclusion.[5] If the record contains substantial evidence to support the Board's conclusion, the decision will not be disturbed.[6]

11. Delaware's unemployment statute provides for "the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own."[7] [T]he Unemployment Compensation Act is usually given a liberal construction favoring a claimant, at least when its basic policy is in issue."[8] An employee who is discharged for "just cause" is disqualified from receiving unemployment benefits.[9] "Just cause" is "a willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[10] In the context of unemployment benefits, the Court has held that "'wilful' [sic] implies actual, specific, or evil intent, while 'wanton' implies needless, malicious or

---

[4] *PAL of Wilmington v. Graham*, 2008 WL 2582986, at *3 (Del. Super. June 18, 2008).

[5] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[6] *See Funk*, 591 A.2d at 225; *Williams v. Brandywine Counseling*, 2016 WL 3660570, at *2 (Del. Super. Apr. 27, 2016).

[7] 19 *Del. C.* § 3301.

[8] *Williams*, 2016 WL 3660570, at *2 (quoting *Delaware Auth. For Reg'l Transit v. Buehlman*, 409 A.2d 1045, 1046 (Del. 1979)).

[9] 19 *Del. C.* § 3314(2).

[10] *Dep't of Corr. v. Toomey*, 1997 WL 537294, at *2 (Del. Aug. 20, 1997) (quoting *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986)).

reckless conduct, but does not require actual intent to cause harm."[11] An employer bears the burden of proving by a preponderance of the evidence that an employee was terminated for just cause.[12]

12. The Board concluded that Employee was terminated for just cause based on findings that Employee willfully violated the Policy's prohibition against possessing weapons and, therefore, Employee's conduct "[rose] to the level of willful and wanton."[13] Nevertheless, the Board expressly noted that it was "reluctant to classify a pocketknife carried in the closed position as a 'weapon of any kind'" under the Policy.[14]

13. The Board's classification of a closed pocketknife with a two-inch blade as a "weapon" is legally incorrect. Employer's Policy does not define "weapon." While Delaware law defines a "deadly weapon" as "a knife of any sort," the statute expressly excludes "an ordinary pocketknife carried in a closed

---

[11] *Jackson v. Christian Care*, 2008 WL 555918, at *2 (Del. Super. Feb. 29, 2008) (internal citations omitted). *See also Brown v. First State Fabrication, LLC*, 2015 WL 7747127, at *2 (Del. Super. Nov. 17, 2015) (quoting *Coleman v. Dep't of Labor*, 288 A.2d 285, 288 (Del. Super. 1972)) ("A willful or wanton act requires the employee to be 'conscious of his conduct or recklessly indifferent to its consequences.'"); *McCaffrey v. City of Wilmington*, 2014 WL 6679176, at *8 (Del. Super. Nov. 3, 2014) (citing *Morris v. Blake*, 552 A.2d 844, 847 (Del. Super. 1988)) (holding that wantonness is demonstrated by a conscious indifference that evidences an 'I-don't-care' attitude).

[12] *Murphy & Landon, P.A v. Pernic*, 121 A.3d 1215, 1222 (Del. 2015) (citing *Edmonds v. Kelly Servs.*, 2012 WL 4033377, at *2 (Del. Sept. 12, 2012)).

[13] *Id.*

[14] *Decision of the Unemployment Ins. Appeal Bd.*, Appeal No. 1107406, at 3 (Feb. 2, 2016).

position" from the definition of "a knife of any sort."[15] The statute defines an "ordinary pocketknife" as "a folding knife having a blade not more than 3 inches in length."[16] Moreover, the manner in which Employee was carrying the pocketknife does not meet the criteria for a "dangerous instrument," which is defined as "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury. . . ."[17] Accordingly, a pocketknife with a two-inch blade carried in the closed position is not a deadly weapon or a dangerous instrument under Delaware law.[18] Moreover, the record contains no evidence that a pocketknife with a two-inch blade carried in a closed position constitutes a "weapon" under the Policy's terms. Therefore, the record is inadequate to support the Board's legal conclusion that Employee brought a "weapon" to the workplace.

14. The Board's determination of willful and wanton conduct by Employee also is not supported by substantial record evidence. Specifically, the record indicates that (1) Employee was never warned about bringing the

---

[15] 11 *Del. C.* § 222(5).
[16] *Id.*
[17] 11 *Del. C.* § 222(4).
[18] *See* § 222(4)–(5). *Cf. State v. Harmon*, 800 A.2d 1289, 1292 (Del. 2002) (finding that the trial court committed reversible error by excluding a pocketknife with a blade measuring less than three inches from the definition of a "deadly weapon" under § 222(5) where there was undisputed evidence that the pocketknife was in an open position and used to inflict physical injury).

6

pocketknife to work;[19] (2) Employee did not associate carrying the pocketknife with a Policy violation;[20] and (3) Employee brought the pocketknife to work because Employee forgot the pocketknife was attached to his belt.[21] Contrary to the Board's conclusion, the record evidence does not support a finding that Employee exhibited willful or reckless indifference toward Employer's expected

[19] R. at 49–50, Tr. at 4:23–5:1 ("MR. BRADLEY: . . . I knew I had a little small pocketknife on my hip, you know what I mean. That happened like a month, but other bosses been coming in and seen the little knife they didn't say nothing."); R. at 53, Tr. 8:10–16 ("BOARD MEMBER: Yes. You had worn it you said off and on for about a month. MR. BRADLEY: Yes. BOARD MEMBER: And no one else manager of the store – MR. BRADLEY: Ain't nobody say nothing to me about the pocketknife on my belt loop."); R. at 54, Tr. 9:14–17 ("MS. SCHMITTINGER: Mr. Bradley, were you ever warned verbally or otherwise not to wear this knife in the workplace? MR. BRADLEY: No, ma'am."); R. at 55, Tr. 10:6–11 ("MR. WILSON: Mr. Mantanez, prior to Mr. Bradley's termination did you ever observe him with – wearing the knife? MR. MANTANEZ: I didn't observe him wearing the knife, because if I did I would have told him about it, but I haven't seen him with the knife.").

[20] R. at 31, Tr. at 16:16–22 ("MR. BRADLEY: I really, really forgot about this weapon thing, but to me I don't, it was a little small pocketknife you know what I mean. I admit that I did it. I admit that I brought the knife, you know what I mean. But I really forgot about the weapon thing you know what I mean."); R. at 52–53, Tr. 7:22–8:1 ("BOARD MEMBER: You were aware of the handbook policy? MR. BRADLEY: Well – yes, ma'am, I was aware. I had just, like I said, I just forgot it was just that, it was an honest mistake.").

[21] R. at 50; Tr. 5:1–3 ("MR. BRADLEY: This one gentleman, I know I didn't supposed to have it on me, but I guess honestly forgot that I had it on me."); R. at 50–51, Tr. 5:23–6:2 ("THE CHAIRMAN: Okay. What was the reason you carried this knife? MR. BRADLEY: I just forgot that I had it on me and it wasn't nothing but a little small pocketknife, because I didn't need it for protection."); R. at 53, Tr. at 8:3–6 ("MR. BRADLEY: . . . But I'm just it was a honest mistake that I forgot to take it off my belt, because it was on my belt right here and I just honestly forgot that I had it on my belt."); R. at 54, Tr. at 9:5–7 ("BOARD MEMBER: That's why it was still on your belt loop and you had forgotten it? MR. BRADLEY: Yes, ma'am.").

standard of conduct.[22]  Rather, the record indicates that Employee was unconscious of the Policy infraction and unaware of the potential consequences of his conduct. The record evidence does not support a finding that Employee consciously deviated from a known and expected standard of conduct.  Therefore, the record is legally inadequate to support the Board's conclusion that Employee acted in willful and wanton manner.

15.    This Court finds that the Board erred by classifying Employee's pocketknife as a "weapon" under the Policy.  This conclusion is not supported by the parties' testimony, the Policy's terms, or by Delaware law.  Similarly, the Board's finding of willful and wanton conduct is contrary to the evidence on the record.  Rather, Delaware law and the record evidence supports a finding that Employee was not terminated for just cause and that he is entitled to unemployment benefits.

16.    The Board's conclusion is not supported by Delaware law or by substantial record evidence.  Therefore, the Board Decision constitutes an abuse of discretion and must be reversed.

---

[22] *See Brown*, 2015 WL 7747127, at *2; *Jackson*, 2008 WL 555918, at *2.

**NOW, THEREFORE**, this 3rd day of January, 2017, the February 2, 2016 Decision of the Unemployment Insurance Appeal Board is **REVERSED** and **REMANDED** to the Board for proceedings on Employee's claim consistent with this decision.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

The Honorable Andrea L. Rocanelli