## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ROBIN P. THOMPSON, as Guardian Ad Litem for REED C. THOMPSON, a minor,<br><br>Plaintiff,<br><br>v.<br><br>CAPE HENLOPEN SCHOOL DISTRICT and BRIDGETTE PEROTTA,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> C.A. No. N17C-09-052 RRC |

Submitted: February 18, 2019
Decided: March 20, 2019

On Defendants' Motion for Summary Judgment. **GRANTED.**

### MEMORANDUM OPINION

Thomas J. Roman, Esquire, and Emily P. Laursen, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill, P.A., Newark, Delaware, Attorneys for Plaintiff.

Douglas T. Walsh, Esquire, Marshall Dennehey Warner Coleman & Goggin, P.C., Wilmington, Delaware, Attorney for Defendants.

COOCH, R.J.

### I. INTRODUCTION

In this case, Robin P. Thompson, ("Plaintiff") as Guardian Ad Litem for Reed C. Thompson, a minor, alleges that defendants' negligent and grossly negligent actions led to Reed sustaining a severe injury to his right little finger. In defendants' motion for summary judgment, they argue that the record demonstrates that Plaintiff has failed to overcome the immunity from civil suits afforded to Defendants under

1

the Delaware State Tort Claims Act ("DSTCA"), 10 *Del. C.* § 4001. Specifically, defendants argue that Perotta's actions prior to Reed's accident were discretionary in nature and not grossly negligent. Further, defendants contend that the immediate cause of Plaintiff's injury, a classroom door, was not faulty in any relevant way.

The Court finds that there are no disputes of material fact which would preclude summary judgment, and the Court concludes defendants are entitled to judgment as a matter of law. Perotta was conducting a discretionary task at the time of Reed's accident, and as such only gross negligence will overcome the DSTCA immunity. The record viewed in a light most favorable to Plaintiff does not indicate gross negligence. Under 10 *Del. C.* § 4001 defendants are immune from liability in this civil suit. Defendants' Motion for Summary Judgment is granted.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

During the 2015-2016 school year, Reed C. Thompson attended the fourth grade at Rehoboth Beach Elementary School. Reed was a student in Perotta's class. On March 9, 2016, Perotta led a hands-on mathematics lesson from the students' mathematics workbook. The school district's curriculum mandated that this lesson be taught, and the fourth grade teachers "met twice a week to go over curriculum in an attempt to make sure they were all teaching the same thing."[1] The lesson called for the students to measure the dimensions of specific items around the classroom. One of the items the students were required to measure was a flag. The classroom flag hung overhead near the sole classroom door.

Perotta provided some instruction to the students, and the lesson commenced. Reed began to measure the flag by the classroom door, which was closed at the time.[2] Reed balanced himself on the doorframe for stability. While Reed worked, another student returned to the classroom from the hallway through the classroom door.[3] The door closed shut on Reed's little finger on his right hand and severed the tip of that finger (the "accident"). Plaintiff's complaint had originally alleged that a gust of wind caused the door to slam shut, but that allegation was abandoned at oral argument, after discovery.

The door that injured Reed was the only entrance into the classroom. The door had a self-closing mechanism which closed the door automatically. A kickstand

---

[1] Pla.'s Br. in Opposition, Trans. No. 62806393, at 3–4 (Dec. 28, 2018).
[2] Def.'s Reply Br., Trans. No. 62853908, at 5 ¶ 11 (Jan. 11, 2019).
[3] *Id.*

attached to the door was intended to stop the door from closing. However, the kickstand did not have enough grip on the floor to prevent the door from shutting. At some point, a custodian at Rehoboth Beach Elementary advised Perotta to "spit" on the floor to provide increased grip for the kickstand.[4] Perotta declined to follow that suggestion, and instead utilized a wedge doorstop whenever she wished to keep the door open.[5] The wedge doorstop apparently worked as intended.[6]

Plaintiff initiated this civil suit claiming that Reed suffered injury as a result of defendants' negligence and gross negligence. Defendants originally moved to dismiss Plaintiff's complaint, arguing that Plaintiff failed to allege sufficient facts to overcome defendants' DSTCA immunity. At oral argument on the motion to dismiss, Plaintiff's counsel indicated that there was reason to believe other similar incidents involving gusts of wind had occurred with the same classroom door prior to the accident. This Court denied defendants' motion to dismiss, and the Court afforded Plaintiff time to undertake discovery to potentially shed further light on Reed's incident and any potential prior similar incidents. Through the course of discovery, the parties learned that the alleged similar incidents did not occur until after the accident. Reed confirmed this timeline in his deposition testimony.[7] Discovery has since closed, and Plaintiff has not sought to amend the complaint. Defendants now move for summary judgment.

## III. THE PARTIES' CONTENTIONS

### A. Defendants' Contentions

Defendants move for summary judgment based on the immunity afforded to public entities under the Delaware State Torts Claims Act. Under the DSTCA, public entities, such as Cape Henlopen School District and its employees, are afforded immunity from liability in a civil suit when the conduct complained of was a discretionary act performed in good faith, without gross negligence.

Defendants argue that Perotta's conduct was entirely discretionary. Defendants contends that the manner in which teachers supervise their students is discretionary as a matter of law, partly because teachers must use their own judgment

---

[4] Def.'s Reply Br., at 4 ¶ 9.
[5] *Id.*
[6] *Id.*
[7] *See* Def.'s Opening Br., Trans. No. 62704290, at 6 ¶ 11 (Nov. 28, 2018).

on how the supervision should be carried out.[8] Perotta provided instructions for the math lesson, and was present in the classroom to supervise the students throughout the math lesson and when the accident occurred. defendants argue that Plaintiff has not provided any evidence—such as a school policy, protocol, or rule—to suggest the manner in which Perotta chose to supervise was instead ministerial in nature.

Second, defendants argue that Perotta's conduct does not in any event constitute gross negligence. Defendants contend that Plaintiff has not provided any evidence to suggest that defendants knew or should have known of other incidents with the classroom door prior to the accident. Defendants asserts that Reed Thompson's own deposition testimony disproves any allegations of prior knowledge. Further, defendants contend that the Plaintiff cannot support a claim of gross negligence based on the faulty kickstand because the kickstand was not used at the time of the accident, and it is not relevant to this case.

### B. Plaintiff's Contentions

Plaintiff advances two arguments to overcome the DSTCA immunity. For both arguments, Plaintiff maintains that there are material issues of fact in dispute which preclude granting summary judgment.

First, Plaintiff contends that Perotta's conduct was ministerial, not discretionary, in nature. Plaintiff argues that an act is ministerial when a school implements a policy regarding the act "and the school is required to follow that policy."[9] Plaintiff contends that Perotta's conduct falls within the definition of a ministerial act because the district required that a certain curriculum be taught.[10] The curriculum required the workbook lesson and Perotta only gave "some instruction[.]"[11] Plaintiff contends that the curriculum is a mandatory school policy, and that Perotta's implementation of this mandatory policy should be considered ministerial.

Second, Plaintiff argues that even if Perotta's conduct was discretionary, not ministerial, Perotta acted with gross negligence. A finding of gross negligence would eliminate defendants' immunity. Plaintiff claims that the defendants were aware of

---

[8] *Id.* at 3 (citing *Morales*, 2013 WL 3337798, at *4).

[9] Pla.'s Br. in Opposition., at 3 ¶ 5 (citing *Morales v. Fam. Founds. Acad., Inc.*, 2013 WL 3337798, at *3 (Del. Super. Ct. June 11, 2013)).

[10] *Id.* at 3 ¶ 6.

[11] *Id.* at 4 ¶ 7.

the "broken classroom door" prior to and at the time of the accident.[12] Plaintiff argues that despite this knowledge Perotta required students to stand near the classroom door to measure the flag that hung nearby. Further, Plaintiff contends that Perotta permitted another student to go to the bathroom at the time of the accident, and turned her back on the classroom door despite knowledge that the student would need to come back through the allegedly faulty door. Plaintiff argues that this conduct constitutes gross negligence.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[13] On summary judgment, the Court must view the facts in the light most favorable to the non-moving party.[14] Once a moving party establishes that no material facts are disputed, the non-moving party bears the burden to demonstrate a material fact issue by offering admissible evidence.[15] The non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts."[16] Further, the Court may draw rational inferences from the facts.[17]

## V. DISCUSSION

The Court agrees with defendants that there are no disputes of fact material to the resolution of this case as a matter of law, even when looking at the facts in a light most favorable to the non-moving party, the Plaintiff. The record is straightforward, and the outcome of this motion turns wholly on the application of the Delaware State Tort Claims Act, 10 *Del. C.* § 4001. The DSTCA provides public entities and public employees qualified immunity in any civil suit in which the complained of conduct involved the exercise of discretion, and was performed in good faith without gross negligence.[18]

---

[12] Pla.'s Br. in Opposition, at 5 ¶ 11.

[13] Super. Ct. Civ. R. 56(e).

[14] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970).

[15] *See* Super. Ct. Civ. R. 56(e); *see also Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).

[16] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[17] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99–100 (Del. 1992).

[18] 10 *Del. C.* § 4001; *see Lloyd v. Jefferson*, 53 F.Supp.2d 643, 683 (D. Del. May 12, 1999) (citing *Wiers v. Barnes*, 925 F.Supp 1079, 1091 (D. Del. May 3, 1996)).

*A. Discretionary Act vs. Ministerial Act*

Much of the consideration under 10 *Del. C.* § 4001 centers around the distinction between discretionary acts, which are subject to immunity, and ministerial acts, which are not afforded immunity.[19] Generally, discretionary acts "are 'those ... which allow[] a choice of methods, or ... those where there is no hard and fast rule as to a course of conduct'" the actor must or must not take.[20] On the other hand, a ministerial act is an act in which the method of implementation is dictated or mandated by certain procedures.[21] A ministerial act is performed "without regard to [the actor's] own judgment concerning the act to be done[,]"[22] or "the matter for which judgment is required has little bearing ... upon the validity of the act."[23]

Delaware courts have previously stated that while a teacher's overarching duty to supervise students is ministerial, the "manner in which a teacher actually supervises [students] is discretionary."[24] Teachers are called upon to use their own judgment and evaluate "many factors" when supervising the classroom.[25] The discretion afforded to teachers in the classroom allows for "a choice of methods[.]"[26] When there is no applicable "hard and fast rule[,]"[27] such as a school policy, that directs the manner in which teachers must act to the point that they have little to no

---

[19] *See Hughes ex rel. Hughes v. Christiana School District*, 950 A.2d 659 (Table), 2008 WL 2083150, at *2–3 (Del. 2008); *Lloyd*, 53 F.Supp.2d at 683; *Sussex County, Delaware v. Morris*, 610 A.2d 1354, 1358–59 (Del. 1992).

[20] *Morales v. Family Founds, Acad., Inc.*, 2013 WL 3337798, at *3 (Del. Super. Ct. June 11, 2013) (quoting *Simms v. Christiana Sch. Dist.*, 2004 WL 344015, at *8 (Del. Super. Ct. Jan. 30, 2004)); *see also Hughes*, 2008 WL 2083150, at *3.

[21] *See Holmes v. D'Elia*, 2015 WL 1889030, at *1 (Del. Super. Ct. Apr. 20, 2015); *J.L. v. Barns*, 33 A.3d 902, 914 (Del. Super. Ct. 2011).

[22] *Morales*, 2013 WL 3337798, at *3 (quoting *Simms*, 2004 WL 344015, at *8).

[23] *Hughes*, 2008 WL 2083150, at *3 (quoting Restatement (Second) of Torts § 895D cmt. h (1979)).

[24] *Morales*, 2013 WL 3337798, at *4 ("Furthermore, although the overarching duty to supervise children is a ministerial act, the manner in which a teacher actually supervises is discretionary."). *See Hale v. Elizabeth W. Murphey Sch., Inc.*, 2014 WL 2119652, at *4 (Del. Super. Ct. May 20, 2014); *Tews v. Cape Henlopen Sch. Dist.*, 2013 WL 1087580, at *4 (Del. Super. Ct. Feb. 14, 2013); *Martin ex rel. Martin v. State*, 2001 WL 112100, at *6 (Del. Super. Ct. Jan. 17, 2001).

[25] *Morales*, 2013 WL 3337798, at *4.

[26] *Id.* at *3.

[27] *Id.* at *3 (citing *Simms*, 2004 WL 344015, at *8).

choice in the matter, then the act—classroom supervision in this case—is considered discretionary in nature.[28]

In the instant case, Plaintiff argues that the school's curriculum constitutes a hard and fast rule, and its implementation by Perotta is a ministerial act. This argument is unavailing. The fourth grade teachers met multiple times a week to discuss the curriculum and attempt to make sure they were all teaching the same thing to their different fourth grade classes. The fact that all the teachers sought to implement the curriculum in the same way does not mean the curriculum or the lessons are "hard and fast rule[s]."[29] At best, the curriculum broadly guided the teachers' lesson plan over the course of the school year. There is no indication that the teachers were directed on what they must or must not do in a manner which left the teachers with minimal to no discretion.

The instant case contrasts with the scenario presented in *Whitsett v. Capital School District*. In *Whitsett* the defendant-school had a clear policy in place regarding student exclusion from gym class for medical reasons. This policy directed how teachers should act.[30] The plaintiff-student provided a doctor's note excusing him from gym class for the following few weeks. Instead of temporarily assigning him to another class, defendant-school had plaintiff-student watch gym class from the sidelines. On his way to the sidelines during an outdoor gym class, plaintiff-student was injured when pushed by other students. The Court concluded that the exclusion policy left the school with little to no discretion on how to handle a student excluded from class. Accordingly, implementation of the policy was considered ministerial and the school could be liable in a civil suit.[31]

Plaintiff has not provided any hard and fast rule akin to the *Whitsett* policy which would rebut the general rule that the manner in which a teacher supervises that teacher's students in the classroom is a discretionary act. Even when looking at the facts in a light most favorable to the Plaintiff, the Court finds that defendants' conduct on March 9, 2016, was discretionary.

---

[28] *See Whitsett v. Capital Sch. Dist.*, 1999 WL 167836, at *1 (Del. Super. Ct. Jan. 28, 1999) ("When a policy is implemented by a school, the school is required to follow that policy, making its actions with regard to that policy ministerial and not discretionary in nature.")

[29] *Morales*, 2013 WL 3337798, at *3.

[30] *Whitsett*, 1999 WL 167836, at *1.

[31] The Superior Court denied defendant-school's motion to dismiss so as to allow discovery to continue "to determine whether that policy was adequately followed or whether the defendants acted with gross negligence." *Id.* at *1.

*B. Gross Negligence*

Although the Court views defendants' conduct as discretionary, the DSTCA immunity will not apply if defendants' conduct constituted gross negligence.[32] Gross negligence is "more than ordinary inadvertence or inattention[,]"[33] and represents "an extreme departure from the ordinary standard of care."[34] The Delaware Supreme Court has likened gross negligence to that of criminal negligence as set forth in 11 *Del. C.* § 231(a).[35] Gross negligence "exists when a person fails to perceive a risk ... of such a nature and degree that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[36]

In the instant case, Plaintiff argues that defendants failed to perceive the risk that the classroom door supposedly posed to the students. Even when the facts are viewed in a light most favorable to Plaintiff, the Court does not see how the door posed a risk. Although the kickstand was faulty, it was not a risk in this case because it was not in use at the time of the accident. Perotta explained that she would use a wedge doorstop, not the kickstand, if she wished to prop the door open. The wedge doorstop was not a risk either, because there is no evidence that the wedge doorstop was faulty. Nor was the wedge doorstop in use at the time of the accident. Further, no one was attempting to keep the classroom door propped open at the time of the accident. Thus, whether or not the door would stay open when someone intended for it to remain open is irrelevant to Plaintiff's allegations.

As to the door itself, there is no evidence that the door was faulty in a manner which constituted a risk when the door was used for simple entrance and exit. The door was the only means of ingress in and out of the classroom, and it can be assumed that the door was used throughout every school day. There were apparently no incidents with that door prior to the accident. Without prior knowledge of similar incidents, or any other indication that the door posed a risk, Perotta's decision to have students work near the functional door cannot be described as an extreme departure from the ordinary standard of care. Even when the material facts are viewed in a like most favorable to Plaintiff, defendants' actions on March 9, 2016, were not grossly negligent.

---

[32] *See* 10 *Del. C.* § 4001(3) ("no claim or cause of action shall arise ... [when] [t]he act or omission complained of was done without gross or wanton negligence[.]")

[33] *See Morales*, 2013 WL 3337798, at *6.

[34] *Morales*, 2013 WL 333798, at *2 (citing *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990)).

[35] *See Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

[36] *Jordan v. Indian River Sch. Dist.*, 2014 WL 12814550, at *3 (Del. Super. Ct. July 31, 2014) (quoting *Morales*, 2013 WL 3337798, at *2).

8

## CONCLUSION

Reed Thompson suffered an unfortunate injury. However, under 10 *Del. C.* § 4001 both public schools and their employees are immune from civil liability when certain conditions are met. These conditions are met in this case. First, Perotta was afforded wide discretion on how to supervise her class, and in doing so undoubtedly relied upon her own judgment. Such conduct is discretionary. Second, Perotta used a functional wedge doorstop to keep the door open. The door had no other known issues. Directing the students take measurements near a fully operational door does not constitute gross negligence. As such, defendants are afforded immunity under 10 *Del. C.* § 4001.

Therefore, for the foregoing reasons, defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Richard R. Cooch, R.J.

cc:     Prothonotary